*1245 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Earl A. Maxwell, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

Count I

Sometime in 1989 or 1990, Alvin Matthews hired respondent to pursue a personal injury claim arising out of an automobile accident. On. December 19, 1990, respondent filed suit on behalf of his client. Subsequently, respondent failed to comply with the trial court’s discovery orders and, as a result, the suit was dismissed without prejudice in April 1995.
After respondent filed a motion for new trial, the trial court recalled the order of dismissal. In December 1995, the parties agreed to a settlement and the defendant forwarded a settlement check to respondent.[1] Subsequently, respondent refused to communicate with his client, failed to provide his client with a settlement statement or accounting, and failed to remit the funds owed to his client, despite repeated In 1996, Mr. Matthews filed a disciplinary complaint against respondent with the ODC. At some point, respondent offered Mr. Matthews $300 to withdraw his complaint; however, Mr. Matthews refused to accept this money. ^requests.[2]
In another issue relating to the Matthews representation, respondent personally guaranteed loans made by a finance company, Oceanside Finance, to Mr. Matthews for living and related expenses during the course of the litigation. Pursuant to a written agreement between Mr. Matthews and respondent, the amount advanced was to be deducted from the client’s settlement. However, respondent kept no records of the loans and was unable to ascertain the amount advanced to his client. Respondent and his client failed to satisfy their obligations under the loans. As a result, Oceanside Finance Company filed suit against respondent and his client.
Finally, later investigation revealed that at some points in time during respondent’s representation of Mr. Matthews, respondent was ineligible to practice law. Specifically, the record indicates that on at least six occasions between 1992 and 1996, respondent was declared ineligible to practice for failure to pay his bar dues or *1246 complete his mandatory continuing legal education requirements.

Count II

After receiving Mr. Matthews’ disciplinary complaint, the ODC requested a response from respondent. Respondent filed a response denying any misconduct.
On October 7, 1996, the ODC directed correspondence to respondent’s law office requesting additional information regarding the settlement documents and disbursement records. The correspondence was returned unclaimed. The following lamonth, the ODC requested the same information, but respondent failed to respond. A subpoena was issued compelling respondent’s appearance and production of documents. On the scheduled date, respondent arrived two hours late, after the court reporter had left, claiming he was unaware he was to give a deposition.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed two counts of formal charges against respondent. The first count related to respondent’s conduct during his representation of Mr. Matthews; the second count related to respondent’s failure to cooperate in the ODC’s investigation of Mr. Matthews’ complaint.
As to Count I, the ODC alleged respondent failed to act with reasonable diligence and promptness in representing his client, a violation of Rule 1.3 of the Rules of Professional Conduct, and failed to communicate with his client in violation of Rule 1.4. It alleged he improperly sought to settle his malpractice liability with his client, thus creating a conflict of interest in violation of Rule 1.7(b). The ODC also alleged that by advancing funds to his client through a finance company, respondent engaged in a prohibited business transaction with a client, a violation of Rule 1.8(a), and offered financial assistance to a client in connection with litigation, a violation of Rule 1.8(e). The ODC alleged respondent violated Rule 1.16(d) by failing to promptly remit funds to which his client was entitled and by failing to provide an accounting. Finally, the ODC alleged that respondent violated Rule 5.5(a) because he engaged in the practice of law while ineligible to do so, and violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice.
14As to Count II, relating to respondent’s failure to cooperate in the investigation of the Matthews complaint, the ODC alleged respondent’s conduct violated Supreme Court Rule XIX, § 9(a) because he violated or attempted to violate the Rules of Professional Conduct and § 9(c) because he knowingly failed to respond to a lawful demand from a disciplinary authority. It further alleged he violated Rule 8.1(b) of the Rules of Professional Conduct by failing to respond to a lawful demand for information from a disciplinary authority, and Rule 8.1(c) by failing to cooperate with the ODC in its investigation. Additionally, it alleged he violated Rule 8.4(a) (violating the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Respondent ultimately filed an answer denying any misconduct.[3] As a result, the matter was scheduled for a formal hearing before the committee.

*1247
Formal Hearing

Respondent appeared at the formal hearing and testified on his own behalf. With regard to his failure to remit the settlement funds to Mr. Matthews or account for these funds, respondent testified that his legal costs and loans far exceeded the settlement amount and, thus, he never paid his client any sum from the settlement. He admitted he did not correspond with his client or take his client’s many telephone calls after the settlement check was endorsed. He admitted offering his client $300 to dismiss his complaint, but stated he was unaware this was a violation of the ethical 1 .¡rules. Additionally, respondent admitted he engaged in the unauthorized practice of law during the period of ineligibility stemming from his failure to comply with his bar obligations.
■ With regard to the loan transactions, respondent testified he conducted legal research and determined it was permissible to personally loan his client funds for living expenses, as well as guarantee the funds advanced by Oceanside Finance Company. Respondent testified he had an ongoing business relationship with the company to assist him in advancing litigation and living expenses to his clients. In the case of Mr. Matthews, respondent testified he initially advanced money from his operating account to his client. Ultimately, he utilized Oceanside to keep up with his client’s monetary requests. He alleged Mr. Matthews would call and ask for money, presumably for living expenses, and respondent would in turn call the finance company and authorize the advance. He stated there was a written agreement between him and his client stating the advanced funds would be taken out of the settlement amount, although respondent did not have a copy of the document. He also alleged his client signed a similar agreement with Oceanside. Respondent claimed that neither he nor Oceanside had any records indicating how much was loaned to Mr. Matthews. Respondent maintained he simply miscalculated the value of his client’s suit and thus took a loss on the case after consideration of the loans and numerous long distance telephone expenses.
In connection with the failure to cooperate allegations in Count II, respondent presented the testimony of Harry Graham, who owned the building in which respondent’s law office was located. Mr. Graham corroborated respondent’s testimony that he had problems receiving mail and service of process.

\ (Hearing Committee Recommendation

As to Count I, the hearing committee concluded respondent intentionally and knowingly violated Rule 1.3 by neglecting a legal matter, and violated Rule 1.4 by failing to communicate with his client. It found he violated Rule 1.7(b) by attempting to entice Mr. Matthews to withdraw his complaint. With regard to his advancing of living expenses to Mr. Matthews through the finance company, the committee agreed respondent’s conduct violated Rule 1.8(á) and Rule 1.8(e). It found he *1248 violated Rule 1.16(d) by failing to promptly remit funds to which his client was entitled and by failing to provide an accounting. Finally, the committee found respondent violated Rule 5.5(a) by engaging in the unauthorized practice of law, and violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice. '
As to Count II, the committee found respondent did not timely and adequately respond to the ODC’s allegations of misconduct, and that he has little respect for the disciplinary system. Nonetheless, the committee found the ODC failed to prove by clear and convincing evidence that respondent violated the Rules of Professional Conduct as charged in Count II by failing to cooperate in the disciplinary investigations and by failing to honor the subpoenas served upon him.
In determining an appropriate sanction, the committee found the baseline sanction is a suspension. It recognized the presence of several aggravating factors: prior discipline,[4] selfish or dishonest motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1984), and indifference to making restitution. It found no mitigating factors.
|7Based on these findings, the committee recommended respondent be suspended from the practice of law for a period of three years.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board adopted in full the findings of the hearing committee. It found the record supported the committee’s conclusion that respondent violated the professional rules subject of Count I. Like the committee, it agreed the ODC failed to prove by clear and convincing evidence the allegations forming the basis of Count II, and recommended these charges be dismissed.
After considering jurisprudence relating to the “more serious counts, including failure to remit, failure to account, failure to communicate/neglect, and unauthorized practice of law,” the board adopted the committee’s proposed sanction of a three-year suspension. It further recommended respondent be ordered to submit a settlement statement or an accounting to his client.
No timely objections were filed in this court to the disciplinary board’s recommendation.[5]
DISCUSSION
We find the record supports the majority of the hearing committee’s findings, but under the facts presented, we decline to find the ODC proved violations of Rule 1.8(a) and (e) of the Rules of *1249 Professional Conduct, relating to respondent’s |sadvancing of living expenses to his client via loans secured through a fí-nance company. Arguably, a plain reading of Rule 1.8 would indicate that any advance to a client, other than one for court costs and litigation expenses, would constitute a violation of the rule. However, the jurisprudence of this court, as exemplified by Louisiana State Bar Ass’n v. Edwins, 329 So.2d 437 (La.1976), has permitted attorneys to advance funds to their clients for minimal, necessary living expenses. Because of various issues arising from this practice, we recently indicated we will appoint a committee to study the revision of Rule 1.8.[6] See our action in Chittenden v. State Farm Mut. Auto. Ins. Co., 00-0414, fn. 1 (La.6/16/00), 763 So.2d 610. Given the evolving state of the law in this area, we cannot say there is clear and convincing evidence that respondent’s actions violated Rule 1.8. Accordingly, we will dismiss this portion of Count I, and determine if the remaining charges support the recommended three-year suspension from the practice of law.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, | preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent admitted that he neglected his client’s legal matter, failed to communicate with his client, and failed to render an accounting to his client. On several occasions during his representation, respondent became ineligible to practice law, but did not refrain from practicing, nor did he communicate this fact to his client. This misconduct alone would justify a lengthy suspension. See, e.g., In re: Wyche, 00-0029 (La.3/31/00), 756 So.2d 311 (three-year suspension imposed on attorney who practiced law while he was ineligible, neglected a legal matter, failed to communicate with his client, and failed to cooperate with the ODC in its investigation). In addition to his misconduct during his representation of the client, we are *1250 concerned about respondent’s actions after the representation ceased. After the client filed a disciplinary complaint against respondent, respondent offered him the sum of $300 in a blatant attempt to have him dismiss the complaint. Taken as a whole, respondent’s conduct is serious in nature, and warrants a baseline sanction of a substantial suspension.
As aggravating factors, we recognize respondent’s prior discipline, selfish or dishonest motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. The record discloses no mitigating factors.
|10In sum, while we find there is insufficient evidence to support a finding that respondent violated Rule 1.8, the remaining violations found by the committee are supported by the record. We conclude the three-year suspension recommended by the hearing committee and the disciplinary board is an appropriate sanction to address this misconduct.. Accordingly, we will impose upon respondent a three-year suspension from the practice of law.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record filed herein, it is ordered that Earl A. Maxwell be suspended from the practice of law in the State of Louisiana for a period of three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment.

. The letter accompanying the check stated the settlement was for $1,900. However, at the formal hearing, respondent testified the settlement was for $1,200.

. The record indicates Mr. Matthews, who was incarcerated by this time, wrote to respondent no less than nine times and called him on numerous occasions, but to no avail. Moreover, Mr. Matthews corresponded with the clerk of court’s office three months after the settlement and learned respondent still had not paid the court costs, which barred the dismissal of the civil suit.

. Respondent initially filed a response via email communication denying any misconduct, *1247 but did not file a timely written response. Based on this failure, the hearing committee issued an order deeming the charges admitted and proven. Respondent filed a motion to set aside this order. Citing our decisions in In re: Gardner, 98-1476 (La. 10/9/98), 719 So.2d 400, and In re: Tosh, 98-2152 (La.10/9/98), 719 So.2d 396, the board granted the motion to remand the matter to the hearing committee, finding respondent made a timely and good faith effort to present a response and noting his participation in the hearing would not delay the proceedings.

. The committee recognized only a 1998 admonition for failure to cooperate. However, as the disciplinary board would later properly point out, respondent also received admonitions for failure to cooperate on July 31, 1995 (95-ADB-063) and on August 22, 1995 (95— ADB-074), and received a public reprimand for failure to cooperate on August 26, 1999 (98-DB-016).

. After the expiration of the twenty-day period for filing objections under Supreme Court Rule XIX, § 11(G)(1), respondent filed a motion for leave of court to file an untimely objection and/or brief, alleging he miscalculated the time delay to submit his objection in this court. This court denied the motion on February 14, 2001.

. Some states, including Alabama, California, Minnesota, Montana, North Dakota, Texas, and Vermont, have recently modified their conflict of interest rule. For example, Montana's version of Rule 1 .8(e) specifically addresses advances guaranteed by a lawyer through a regulated financial institution:
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter;
(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client;
(3)a lawyer may, for the sole purpose of providing basic living expenses, guarantee a loan from a regulated financial institution whose usual business involves making loans if such loan is reasonably needed to enable the client to withstand delay in litigation that would otherwise put substantial pressure on the client to settle a case because of financial hardship rather than on the merits, provided the client remains ultimately liable for repayment of the loan without regard to the outcome of the litigation and, further provided that neither the lawyer nor anyone on his/her behalf offers, promises or advertises such financial assistance before being retained by the client, [emphasis added]