21 So.3d 934 (2009)
In re Michael A. FENASCI.
No. 2009-B-1665.
Supreme Court of Louisiana.
November 20, 2009.

*935 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Michael A. Fenasci, an attorney licensed to practice law in Louisiana.

FORMAL CHARGES
In a sworn statement to the ODC, Joel Merrick stated that beginning in the early 1990s he worked for respondent as a "runner" to solicit prospective clients in Plaquemines Parish.[1] On November 30, 1997, Mr. Merrick entered into an employment contract with respondent's law firm, Fenasci & Associates, whereby Mr. Merrick acted as an independent contractor to perform services for the law firm, including maintaining direct contact with clients. Mr. Merrick stated that respondent generally paid him fifteen percent of the amount recovered in a given case.
At some point, Mr. Merrick brought respondent the case of his cousin, Roy Jones, who was injured in a 1994 gasoline pipeline eruption. On November 21, 1996, respondent issued two checks payable to Mr. Jones, in the amounts of $50,000 and $100,000, respectively, as "settlement *936 funds." Both checks were signed by respondent but drawn on the bank account of Estate Management Consultants, Inc.
In February 1999, respondent paid Mr. Merrick $309,725.91 by check drawn on his client trust account and payable to D.L.J.S.C., which is reportedly an investment company respondent established. Respondent also purchased a BMW automobile for Mr. Merrick's use.
On October 27, 1999, Mr. Merrick retained respondent's services for a claim of police brutality during his arrest on July 18, 1999 by a New Orleans police officer. On July 18, 2000, respondent filed suit on Mr. Merrick's behalf. He also advanced funds for Mr. Merrick's surgeries, medical treatment, and diagnostic testing. In August 2002, respondent began providing Mr. Merrick with a monthly stipend for "necessary living expenses."
In October 2000, respondent requested and obtained a $5,500 loan from Mr. Merrick. In December 2000, respondent requested and obtained a $25,000 loan from Mr. Merrick. In response to the ODC's request for an explanation of these loans, respondent advised that he had entered into an oral agreement with Mr. Merrick that in exchange for a loan of $30,000 for six months, respondent would forgive approximately $2,800 in debt which Mr. Merrick owed to his law firm.[2] Respondent repaid the $30,000 loan on June 11, 2001 with a check drawn on his client trust account. Respondent stated that he borrowed money from Mr. Merrick to finance an oil spill case. He also stated that it was a "pretty straightforward transaction" and that Mr. Merrick received interest. Respondent further stated that "Mr. Merrick has been loaned Tens of Thousands of Dollars by the firm, which he has not repaid and he is not being charged interest on those loans."
On January 13, 2004, respondent filed a criminal complaint against Mr. Merrick with the Jefferson Parish Sheriff's Office for attempted extortion and for making threats against respondent, his fiancee, and his secretary. By letter dated March 11, 2004, Mr. Merrick terminated respondent's services.

DISCIPLINARY PROCEEDINGS
In June 2007, the ODC filed one count of formal charges against respondent as set forth above. Based on the above factual allegations, the ODC alleged that respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.8(a) (a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client), 1.8(e) (a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation), 1.15(a)(b) (safekeeping property of clients or third persons), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 7.2(a) (a lawyer shall not give anything of value to a person for recommending the lawyer's services), 7.3(a) (direct contact with prospective clients), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent answered the formal charges, denying the factual allegations set forth above as well as the alleged rule violations.

*937 Hearing Committee Report

This matter proceeded to a formal hearing on the merits. After considering the testimony and evidence presented at the hearing, the hearing committee made the following findings:
Mr. Merrick testified extensively during the hearing. However, the committee found him at times to be evasive and at other times to be contentious, and concluded that much of his testimony was of "questionable credibility." The committee found respondent and his witnesses to be credible.
Mr. Merrick testified that he made $5,500 and $25,000 loans to respondent in October and December 2000, while he was working for respondent and apparently while respondent was also handling a personal injury case for him (although Mr. Merrick was uncertain as to the timing of the personal injury case). The loans were repaid within a couple of months. Mr. Merrick also testified that respondent did not suggest that he consult an attorney before making the loans. However, respondent testified that he did suggest to Mr. Merrick that he consult an attorney, and Mr. Merrick did, in fact, consult two attorneys. There was no evidence that Mr. Merrick signed a required written informed consent form regarding a consultation with another attorney. Respondent admitted that the loan was not reduced to writing in the form of a note or otherwise.
Mr. Merrick received payments from respondent in compensation for his services. He also received loans and advances from respondent, averaging approximately $1,500 per month for a period of time while in necessitous circumstances, for undocumented living expenses.
Respondent acknowledged that, due to sloppy business practices, he sometime made payments from his client trust account directly to various individuals and entities, such as Peake BMW for auto repairs to Mr. Merrick's vehicle, loan payments, and a number of individuals who provided assistance on cases. However, respondent testified that the money he took from the client trust account was his earned attorney's fees and not client funds. No evidence was introduced at the hearing to indicate otherwise, and there was no evidence of conversion of any client's funds.
Mr. Merrick testified that respondent paid him 15% of his attorney's fees for bringing clients to him and for working those clients' files. However, Mr. Merrick had no documents or records to support his assertion, and there was no other evidence to support this claim, circumstantial or otherwise. Mr. Merrick testified that the check payable to D.L.J.S.C. was somehow evidence of payment to him through a front company. However, respondent testified that D.L.J.S.C. was a clearing house for investment accounts, and the funds for the check were his attorney's fees, which he was moving from his client trust account to an investment account.
In his sworn statement, respondent initially stated that he did not recall whether he had a written employment agreement with Mr. Merrick for the services Mr. Merrick performed. However, respondent later acknowledged the agreement when it was presented to him. Respondent also denied purchasing a BMW for Mr. Merrick while Mr. Merrick testified that respondent did purchase a BMW for him.
Based on the above findings, the committee determined that respondent violated Rule 1.8(a) because there was no evidence that the loans from Mr. Merrick to respondent were documented or that the required informed consent, in a writing signed by the client, was ever given. The committee also determined that respondent *938 failed to strictly comply with the requirements of Rule 1.8(e) in providing financial assistance to Mr. Merrick for undocumented living expenses. However, the committee found the remaining charges were not proven by clear and convincing evidence, including the allegations relating to commingling and conversion of client funds, runner-based solicitation, and making false and misleading statements to the ODC.
Finding that respondent's conduct did not harm Mr. Merrick, the committee recommended that respondent be publicly reprimanded. The committee also recommended that respondent complete the Louisiana State Bar Association's Ethics School.
Respondent filed an objection to the hearing committee's report. Specifically, respondent objected to the committee's finding that he violated Rule 1.8(e) in advancing living expenses to Mr. Merrick, on the ground that the committee relied upon the current version of the rule, which did not go into effect until April 1, 2006, after the time of his alleged misconduct. Respondent argued that the controlling rule of law at the time of his alleged misconduct was that set forth in Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La. 1976), which he claimed did not require written documentation of the client's living expenses prior to the advancement of living expenses by the attorney.

Disciplinary Board Recommendation
After review, the disciplinary board agreed with respondent that the hearing committee applied the incorrect version of Rule 1.8(e), as it cited the 2006 version. The prior version of Rule 1.8(e) appeared to prohibit advancing living expenses to a client, but during the relevant time the court's actual standard was expressed in the 1976 Edwins decision. More recently, Edwins was summarized in Chittenden v. State Farm Mutual Automobile Ins. Co., 00-0414 (La.5/15/01), 788 So.2d 1140:
In Edwins, a disciplinary proceeding against an attorney, we addressed, inter alia, the propriety of an attorney advancing funds to his client in violation of Disciplinary Rule 5-103(B). With Justice Tate writing for the majority in Edwins, we concluded that while a part of the advanced expenses were seemingly prohibited by the disciplinary rules, we were "unwilling to hold that the spirit or the intent of the disciplinary rule is violated by the advance or guarantee by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or of necessary medical treatment." Edwins, 329 So.2d at 445. Thus, this Court set the policy that attorneys were permitted to advance funds to their clients for minimal, necessary living expenses and that clients would be responsible for reimbursing these funds. The theory behind the policy was that this Court did not want to force impoverished individuals into early settlements because they were unable to wait out the delays of litigation that are necessary to enforce a cause of action. Id. at 446. [Emphasis added; internal footnotes omitted.]
The board found that under this standard enunciated in Edwins, respondent committed misconduct on numerous occasions by advancing living expenses to Mr. Merrick without communicating to Mr. Merrick that he would be required to reimburse those funds. The record contains evidence that respondent gave Mr. Merrick significant sums of money without clearly distinguishing which portions were advances on litigation as opposed to monies advanced under Mr. Merrick's work agreement with respondent. Moreover, respondent gave Mr. Merrick these funds without clearly *939 establishing his obligation to repay them from any recovery in Mr. Merrick's personal injury suit. To the contrary, the record contains unrefuted testimony that Mr. Merrick understood these sums to be simply part of his compensation as a contract worker for respondent. Accordingly, the board made an express finding that respondent failed to properly disclose, describe, and otherwise impose the conditions of repayment upon the numerous sums he now claims were litigation "advances" for living expenses.
As to the other misconduct alleged in the formal charges, the board found that respondent violated Rule 1.8(a) in that he borrowed a total of $30,500 from Mr. Merrick but did not commit the loan agreements to writing. The board also determined that respondent violated Rule 1.15(a) by failing to keep law firm funds separate from client funds, the latter of which must be kept in a client trust account. Respondent commingled at least $30,000 of his own money with client funds in his client trust account, and he is presumed to have converted client funds when he wrote a check from his trust account payable to Peake BMW in the amount of $792 for repairs to Mr. Merrick's car and wrote another check payable to Mr. Merrick as a "loan" in the amount of $2,000. Respondent could offer no explanation why he was drawing these funds from his trust account.
Based on these findings, the board determined that respondent violated duties owed to his client and the legal profession. He acted knowingly and intentionally, causing serious potential harm. Relying on the ABA's Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension.
In aggravation, the board found prior disciplinary offenses,[3] refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1980). The board found no mitigating factors present.
Turning to the court's prior cases considering similar misconduct, the board noted that in In re: Schambach, 98-2432 (La.1/29/99), 726 So.2d 892, the lawyer was suspended from the practice of law for three years for borrowing a total of $40,000 from his client, with whom he was also having a sexual relationship. In In re: Heisler, 06-1202 (La.11/3/06), 941 So.2d 20, the court imposed a fully deferred one-year suspension upon a lawyer who, among other misconduct, loaned $1,000 to his client while holding her jewelry as collateral. Considering these cases, the board concluded:
Here, Mr. Fenasci made improper loans of $30,500.00 from a client, he made extensive and improper monetary "advances" spanning several years to the same client, he also commingled $30,000.00 of his own funds with client funds, and he presumably converted $792.00 and $2,000.00 in funds drawn from his client trust account. This pervasive misconduct calls for a suspension at the upward range of the cases cited, i.e. a three year suspension.
Given the aggravating factors discussed earlier, and the lack of any mitigating factor, the Board finds no reason to deviate downwards in our Recommendation. In our view, the aggravating circumstances serve to underscore that three years is the appropriate duration.
Based on this reasoning, the board recommended that respondent be suspended from the practice of law for three years.
*940 Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, the record supports the hearing committee's factual findings as modified by the disciplinary board. In summary, respondent improperly obtained a loan from Mr. Merrick, improperly advanced living expenses to Mr. Merrick, commingled client funds with his own funds, and converted client funds to his own use. Respondent's conduct violated Rules 1.8(a) and 1.15(a) of the Rules of Professional Conduct. We also agree with the board's determination that respondent violated the standards for providing financial assistance to a client as set forth in Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976), specifically that the client remain liable for repayment of all funds, whatever the outcome of the litigation. With respect to the allegation that respondent engaged in runner-based solicitation in violation of Rules 7.2(a) and 7.3(a), in light of the committee's finding that Mr. Merrick lacks credibility and the ODC's failure to introduce any evidence corroborating Mr. Merrick's testimony, we find there is no evidence in the record to support a finding that respondent violated these rules.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly, if not intentionally, violated duties owed to Mr. Merrick and the legal profession. Although the record does not indicate that respondent caused any actual harm, the potential for serious harm existed. Under the ABA's Standards for Imposing Lawyer Sanctions, the baseline sanction for this type of misconduct is a period of suspension.
The record supports the aggravating factors found by the disciplinary board. In addition, respondent acted with a dishonest or selfish motive. There are no mitigating factors present.
Considering all the circumstances, we find that the three-year suspension recommended by the disciplinary board is an appropriate sanction for respondent's misconduct. Accordingly, we will adopt the board's recommendation.

DECREE
Upon review of the findings and recommendations of the hearing committee and *941 disciplinary board, and considering the record, it is ordered that Michael A. Fenasci, Louisiana Bar Roll number 5508, be and he hereby is suspended from the practice of law for a period of three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[*] Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice Pro Tempore, participating in the decision.
[1] One of those alleged clients was Ulysses James Wilson. The ODC subpoenaed Mr. Wilson to testify at the formal hearing in this matter to corroborate Mr. Merrick's claim that he acted as a runner for respondent. However, following Mr. Merrick's testimony, the ODC released Mr. Wilson from his subpoena without calling him to testify.
[2] In January 1998, Mr. Merrick had borrowed $792 from respondent's law firm to pay for repairs to his automobile, and in February 1999, Mr. Merrick borrowed $2,000 from respondent's law firm.
[3] In 1995, the disciplinary board publicly reprimanded respondent for failing to comply with a subpoena to appear before the ODC in connection with a disciplinary complaint against him.