PARRO, J.
12Kathi Blanchard appeals a judgment dismissing her claims against Henri M. Saunders and Dominick M. Bianca, the attorneys who represented her ex-husband, Henry Joseph Blanchard, in a maritime personal injury suit. For the following reasons, we vacate in part, reverse in part, render in part, and remand with instructions to transfer a portion of this matter to the Nineteenth Judicial District Court.
FACTUAL AND PROCEDURAL BACKGROUND
In April 2008, Kathi Blanchard (Kathi) asked attorney Benn Hamilton to handle a divorce and community property settlement for her and her estranged husband, Henry Joseph Blanchard (Henry). The couple had worked out and agreed to all the details of their divorce and needed someone to formalize the documents and take their case before the court. The parties eventually obtained a divorce and entered into a voluntary settlement of community property and an agreement as to final spousal support.[1] Henry had been *246 injured -in a maritime accident and agreed that one-third of his personal injury settlement would be paid to Kathi as final spousal support within fifteen days after he received those proceeds. On June 3, 2008, The Family Court judge signed a judgment of divorce incorporating this agreement, as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, within fifteen (15) days of HENRY JOSEPH BLANCHARD’S settlement or compromise of his personal injury claims, he shall cause to be made by his personal injury attorney, representative or other agent to KATHI BLANCHARD a final one-time payment of spousal support in the amount of thirty-three and one-third (33 1/3%) per cent of his personal injury settlement.
The judgment of divorce also included provisions for Henry to pay Kathi final periodic spousal support in the amount of $500 per month, to continue until he settled his maritime personal injury claim and paid her one-third of the settlement; this payment would constitute a final payment of spousal support.
Kathi and Henry also filed a “Compromise, Release and Community Property | .«¡Settlement,” which included the following paragraph:
NOW THEREFORE for and in consideration of the sum of thirty-three and one-third (33 1/3) per cent of any and all proceeds to be paid to HENRY JOSEPH BLANCHARD for personal injuries sustained by him, KATHI BLANCHARD settles and compromises her claim for final spousal support.
On or about April 11, 2011, Henry settled his maritime personal injury claim for $500,000. His attorneys, Saunders and Bianca, computed and deducted the fees, expenses, and advances incurred during the pendency of the suit and presented Kathi with a check in the amount of $24,481.24, which purportedly represented her one-third of the net proceeds. They also gave her a client disbursement sheet showing all case expenditures, loans, cash advances, and litigation expenses.
Kathi disagreed with the attorneys’ computation of the net proceeds and, on May 26, 2011, filed in The Family Court a petition seeking a declaratory judgment, as well as to enforce the divorce judgment and community property settlement, to object to the calculation of her portion of the settlement proceeds, and to question and contest certain expenses included in the settlement computations. Her petition also claimed past-due spousal support, contempt of court, attorney fees, and court costs from Henry. She named as defendants her ex-husband and his two personal injury lawyers. Her petition asked the court to define and declare her rights under the divorce judgment and compromise, release, and community property settlement rendered and filed in The Family Court. She claimed Saunders and Bianca used an improper method of computing her one-third share of Henry’s personal injury settlement, claiming she and Henry had agreed that her portion would be one-third of the gross settlement amount. She also claimed certain deductions were erroneous and/or were advances made to Henry designed to reduce her portion of the settlement. She deposited the check for $24,481.24 in the registry of the court and asked for a rule to show cause against Henry, Saunders, and Bianca.
Henry did not file any responsive pleadings to Kathi’s petition. Saunders and |4Bianca answered the petition and filed a reconventional demand against Kathi for *247 filing a frivolous lawsuit, malicious prosecution, defamation, and intentional and negligent infliction of emotional distress. They also raised declinatory exceptions raising the objections of improper venue, lack of jurisdiction over the person of the defendants, and lack of jurisdiction over the subject matter of the action. In addition, they raised dilatory exceptions raising the objections of improper cumulation of actions and/or improper joinder of parties, and peremptory exceptions raising the objections of no cause of action and no right of action.
After a hearing on the exceptions on September 6, 2011, at which evidence was presented and Kathi testified, the court denied the exceptions of improper venue, lack of subject matter jurisdiction, and improper cumulation of actions, and granted the exceptions of lack of personal jurisdiction, improper joinder of parties, no cause of action, and no right of action. The judgment, which was signed September 23, 2011, dismissed with prejudice all claims against Saunders and Bianca and was designated as a final, appealable judgment. Kathi appealed the judgment; Saunders and Bianca answered the appeal, seeking an award of damages, attorney fees, and court costs for frivolous appeal, pursuant to LSA-C.C.P. art. 2164. Because it was clear that Kathi was owed at least the amount deposited in the registry of the court, the trial court ordered that those funds be released to her.
ISSUES ON APPEAL
Kathi presents the following issues for review: (1) Is a professional attorney-client relationship always necessary in order to justify a lawsuit against an adversary’s lawyer; (2) What are the legal standards for the exceptions of no cause of action and no right of action and how do they differ; and (3) What is the legal function of a petition for declaratory judgment and was it appropriate in this case?
Based on certain provisions concerning declaratory judgments, Kathi argues that she is an interested party with the right to seek a declaration and definition of the | ¡¡judgment in which she compromised her claim for final spousal support by agreeing to accept one-third of Henry’s personal injury settlement proceeds. See LSA-C.C.P. arts. 1871 and 1872.[2] Under Article 1880,[3] she joined the other parties, Saunders and Bianca, who were responsible for computing the amount of that payment, claiming their joinder was mandatory as parties who have an interest in or who would be affected by the declaratory judgment.
*248 With reference to the exception raising the objection of no cause of action, she claims the well-pleaded facts of her petition set out a legal claim against Saunders and Bianca, as they were the ones who computed the ultimate amount that would be paid to her under the settlement, and she asserts they committed factual and legal errors in making those computations. She also accuses them of making “living expense” payments to Henry for a lavish lifestyle that was not necessary and contends that these payments were intended to reduce her ultimate share of the proceeds. Regarding the exception of no right of action, she asserts that she is the only person to whom the law grants the cause of action stated in her petition.
Saunders and Bianca claim that they had no contractual or other agreement with Kathi, and her claims are solely against her ex-husband, whose duty it was to “cause to be made” to Kathi a payment constituting one-third of his settlement proceeds. They |r,further claim that they owe her no duty. Because they felt the stipulated judgment of divorce lacked clarity, Saunders sent a letter to Kathi’s attorney, confirming that the “final, one-time payment” of spousal support from Henry’s settlement proceeds would be based on his “net recovery, after factoring in attorney’s fees and litigation expenses,” rather than on his gross recovery. They assert that by signing and returning the letter, a copy of which was admitted into evidence at the hearing, Hamilton agreed that this was his and his client’s understanding of the judgment.
Ultimately, their argument is that any cause of action stated in Kathi’s petition is against her ex-husband, acknowledging that if she has a cause of action, then she is the person who has the right to bring it against him. However, because they were not parties to the stipulations between Ka-thi and Henry, her right of action is not against them.
In their answer to the appeal, Saunders and Bianca claim they are entitled to damages for a frivolous appeal, because Kathi and her attorney represented to the court that they believed she was entitled to one-third of the gross settlement proceeds, when the letter signed and returned by Hamilton clearly acknowledged that the agreement was as to one-third of the net proceeds.
ANALYSIS

No Cause/No Right of Action

A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. Everything on Wheels Subaru, Inc. v. Subaru South., Inc., 616 So.2d 1234, 1238 (La.1993). The function of an exception that raises the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey v. DeCaire, 03-1299 (La.3/19/04), 869 So.2d 114, 118. No evidence may be introduced to support or controvert the exception raising the objection of no cause of faction. LSA-C.C.P. art. 931. All facts pled in the petition must be accepted as true. Rebardi v. Crewboats, Inc., 04-0641 (La.App. 1st Cir.2/11/05), 906 So.2d 455, 457. However, the jurisprudence recognizes an exception to this rule, which allows the court to consider evidence which is admitted without objection to enlarge the pleadings. Stephenson v. Nations Credit Fin. Services Corp., 98-1688 (La.App. 1st Cir.9/24/99), 754 So.2d 1011, 1021. In reviewing the petition to determine whether a cause of action has been stated, the court must, if possible, interpret it to maintain the cause of action. Any reason *249 able doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. Livingston Parish Sewer List. No. 2 v. Millers Mut. Fire Ins. Co. of Texas, 99-1728 (La.App. 1st Cir.9/22/00), 767 So.2d 949, 952, writ denied, 00-2887 (La.12/8/00), 776 So.2d 1175.
An action can only be brought by a person having a real and actual interest that he asserts. LSA-C.C.P. art. 681; Industrial Companies, Inc. v. Durbin, 02-0665 (La.1/28/03), 837 So.2d 1207, 1216. The function of the peremptory exception raising the objection of no right of action is to determine whether the plaintiff belongs to a class of persons to whom the law grants the cause of action asserted in the suit. See LSA-C.C.P. art. 927(A)(6); Industrial Companies, 837 So.2d at 1216. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit; it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Benoit v. Allstate Ins. Co., 00-0424 (La.11/28/00), 773 So.2d 702, 708. Evidence is admissible on the trial of an exception of no right of action to support or controvert the objections pleaded, when the grounds for the objections do not appear from the petition. LSA-C.C.P. art. 931. Whether a plaintiff has a right of action is a question of law; therefore, it is reviewed de novo on appeal. Gibbs v. Delatte, 05-0821 (La.App. 1st Cir.12/22/05), 927 So.2d 1131, 1135, writ denied, 06-0198 (La.4/24/06), 926 So.2d 548.
| sBased on the above, the first step for this court is to examine the petition to determine whether the law extends a remedy to Kathi against Saunders and Bianca under the factual allegations of the petition. In paragraph 5 of the petition, Ka-thi alleged that the divorce judgment and community property settlement between herself and Henry required him and his personal injury attorneys to pay her the sum of thirty-three and one-third percent of his personal injury settlement within fifteen days of settlement. In paragraph 7, she claimed, upon information and belief, that Henry had settled his personal injury claims against all liable parties on or about April 14, 2011, and was represented in this matter by Saunders and Bianca. Paragraph 8 stated that she sought a declaration of her rights under the divorce judgment and community property settlement rendered or filed in the family court lawsuit. Paragraph 9 alleged that Saunders intended to use an inappropriate and improper method of computing her thirty-three and one-third percent of Henry’s personal injury settlement. Paragraph 10 stated that she and Henry had agreed that the calculation of her percentage would be based on the proceeds of his gross settlement. Paragraph 11 alleged that Saunders and Bianca had improperly deducted from Henry’s personal injury settlement certain loans, cash advances, and/or expenses on behalf of Henry. In paragraph 12, Kathi stated that a Medicare allocation or set-aside for future medical services or future Medicare benefits to be received by Henry was improperly deducted from the personal injury settlement prior to the computation of petitioner’s portion, and in paragraph 13, she alleged that this calculation was based on inaccurate and incorrect information and was, therefore, defective in the calculation of her overall amount. Paragraph 14 stated that Saunders and Bianca had deducted from Henry’s personal injury settlement certain medical expenses and medical bills that should have been covered by Henry’s medical and hospitalization insurance. Fi *250 nally, in paragraph 15, she stated that it appeared from the client disbursement sheet, which was prepared by Saunders, that certain expenses paid on behalf of 19Henry were duplicates, not necessary living expenses, or otherwise camouflaged advances designed to reduce her settlement portion. In paragraph 20, she stated that these incorrect and inappropriate computations resulted in a tender to her of the amount of $24,481.24, deemed to be full payment of her claim against Henry’s personal injury settlement.

Cause of Action/Right of Action in Non-Client Suit Against Attorneys

The issue is whether Kathi has stated a claim against Saunders and Bianca that, based on statutory law or jurisprudential rulings, entitles her to the relief she seeks. Or, as posed in her brief to this court, is a professional attorney-client relationship always necessary in order to justify a lawsuit against an adversary’s lawyer? In the case of Penalber v. Blount, 550 So.2d 577, 579 (La.1989), the supreme court addressed a situation in which the Livingston Parish Police Jury had filed an action against an adversary’s attorney, alleging that the attorney had knowingly violated statutory and constitutional prohibitions against seizure of public assets by seizing its property after intentionally failing to notify it of the seizure. The court noted that Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client’s adversary when acting in his client’s behalf. Id. A non-client, therefore, generally cannot hold his adversary’s attorney personally liable for either malpractice or negligent breach of a professional obligation. Id. at 581. The intent of this rule is not to reduce an attorney’s responsibility for his or her work, but rather to prevent a “chilling effect” on the adversarial practice of law and to prevent a division of the loyalty owed to a client. Id. Therefore, if the police jury had alleged facts establishing only a negligent wrongful seizure of police jury assets, the attorney’s exception of no cause of action would be sustained. Id. at 582. However, because the police jury’s petition asserted that the attorney’s action was intentionally tortious and set forth allegations of intentional culpable acts on the part of the attorney, the exception of no cause of action could not be sustained. The court stated, “Intentionally 1 lfttortious actions, ostensibly performed for a client’s benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client’s adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct....” Id.
In a later case, Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, the supreme court reiterated that since an attorney does not owe a legal duty to his client’s adversary when acting on the client’s behalf, the non-client could not hold the adversary’s attorney personally liable for malpractice or negligent breach of a professional obligation, but could bring a cause of action against the attorney based on intentional tort. Id. at 130. However, the supreme court stated that the Penalber requirement of only general intent to bring about a result that would invade the interest of another in a way that the law forbids, was too broad and would have a chilling effect on an attorney’s work on behalf of his client. Therefore, in the Montalvo case, the supreme court stated that the facts in the plaintiffs petition had to allege that the attorney defendants intended to cause direct harm to the plaintiff. Emphasizing this requirement, the court further stated, “[W]e believe it is essential for the petition to allege facts showing specific malice or an intent *251 to harm on the part of the attorney.” Id. (Emphasis added). Both Penalber and Montalvo address the situation in which a plaintiff files suit against his adversary’s present or former attorney. See also Crockett v. Crockett, 612 So.2d 89 (La.1993); Block v. Bernard, Cassisa, Elliott & Davis, 04-1893 (La.App. 1st Cir.11/4/05), 927 So.2d 339, 345; and Doyle v. Landry, No. 01-31482, 67 Fed.Appx. 241, 2003 WL 21108477, at *5 (5th Cir. April 21, 2003) (not published in Federal Reporter).
In footnote two of the Penalber opinion, the Louisiana Supreme Court clarified that the opinion did not address situations where the non-client is not an adversary, but a third-party beneficiary, citing Capital Bank & Trust Co. v. Core, 343 So.2d 284 (La.App. 1st Cir.1977), writ denied, 345 So.2d 504 and writ not considered. 345 So.2d 61 (La.1977), and Succession of Killingsworth, 270 So.2d 196 (La.App. 1st Cir.1972), writ granted, 273 So.2d 292 (La.1973), rev’d in part, aff'd in part, 292 So.2d 536 (La.1973). Penalber, 550 So.2d at 578 n. 2. In the Capital Bank case, the bank had advanced funds on the strength of a title opinion rendered to it by an attorney whom the bank did not retain. This court analogized this situation to a “stipulation pour autrui” under Louisiana law, pursuant to which one may bind himself for the benefit of a third party, and found that Capital Bank had alleged a cause of action for fraud against the attorney. Capital Bank, 343 So.2d at 288-89. Succession of Killingsworth involved a suit by legatees under a will that had been declared invalid against the attorneys who had prepared the will. This court held that evidence established that the will had been typed by the officiating notary public’s secretary, rather than by the notary/attorney, as was statutorily required. Succession of Killingsworth, 270 So.2d at 203. Therefore, the legatees’ claims against the notary/attorney could be maintained under Louisiana Civil Code article 2315. Id. at 205. The supreme court granted writs and reversed, finding that the testimony of subscribing witnesses to the testament was not supported by sufficient independent facts or reasonable inferences. Therefore, although the cause of action asserted by the legatees was not questioned, the will was declared valid. Succession of Killingsworth, 292 So.2d at 556 (on rehearing). In Joyner v. Wear, 27,631 (La.App. 2nd Cir.12/6/95), 665 So.2d 634, 640 n. 1, writ denied, 96-0040 (La.2/28/96), 668 So.2d 370, the court referred to footnote 2 in Penalber, noting that where the non-client was not an adversary, but a third-party beneficiary of the attorney’s actions, a negligence cause of action is recognized. See also Davis v. Parker, 58 F.3d 183 (5th Cir.1995). These cases demonstrate that non-client parties, whose interests as third-party beneficiaries of the attorney’s actions are negatively affected by his substandard work, can have a negligence cause of action against the attorney. Cf. Congress Square Ltd. P’ship. v. Polk, 2011 WL 837144, *11 n. 6 (E.D.La.3/4/11) (not reported in F.Supp.2d) (stating that the heightened intent requirement articulated in Montalvo 112logically extends to all claims of intentional tort asserted against an attorney by a non-client).
Examining the allegations of Ka-thi’s petition in the light of this jurisprudence, we note first that Kathi is not asserting a claim against an adversary’s attorneys; she was not an adversary to Henry in his maritime personal injury litigation. Rather, she was a non-client party for whose benefit the split of the settlement proceeds was intended, and claimed that the attorneys negligently and/or intentionally deducted expenses in a manner that damaged her interests. Her petition alleged that Saunders and *252 Bianca made factual errors in computing some of the deductions from her portion of the settlement proceeds, including the Medicare set-aside; made deductions for medical expenses that should have been paid by Henry’s medical and hospitalization insurance; deducted some expenses twice; paid certain expenses that were not necessary living expenses, but were camouflaged advances designed to reduce her settlement portion; and used the wrong basis for her portion by tendering to her only net proceeds, rather than gross proceeds. Accepting all of these statements in the petition as true, as we are required to do in evaluating whether a cause of action has been stated, we conclude that Kathi has asserted a cause of action for negligence against the attorneys in their computation of her portion of the settlement proceeds. More importantly, given the somewhat murky standards stated in the jurisprudence on this issue, she has also alleged an intentional tort by stating that the attorneys deducted certain payments to Henry that were not necessary living expenses, but were camouflaged advances designed to reduce her portion. This allegation basically states that the attorneys intended, in fact, “designed” to directly harm her by reducing her portion of the settlement proceeds, and to achieve that end, made inappropriate advances to Henry that were camouflaged as legitimate and necessary cost-of-living expenses.
Usually, this would be the end of our inquiry as to the exception of no cause of action. However, in this case, because that exception was tried along with other 1 ^exceptions, including the exception of no right of action, which allows introduction of evidence, we may consider information beyond what was stated in the petition. Specifically, the record includes an August 6, 2008 letter from Saunders to Kathi’s attorney, asking Hamilton to confirm their recent conversation in which Hamilton had agreed with Saunders that it was his understanding, as well as his client’s, that the “one-third figure would be calculated from Henry’s net recovery, after factoring in attorney’s fees and litigation expenses incurred in connection with his personal injury claim.” Hamilton signed the letter to indicate his agreement, dated his signature August 8, 2008, and returned the signed letter to Saunders. Since an attorney acts as his client’s agent, Hamilton’s signature served as an expression of Kathi’s agreement to this calculation basis. Saunders and Bianca claim that the letter conclusively establishes that their computation was completed in accordance with Kathi and Henry’s agreement in the divorce and community property settlement.
The transcript of the hearing also includes Kathi’s testimony,[4] in which she stated that although she had known of this letter, her understanding of it was that Hamilton did not sign it on her behalf, insisting she had never agreed that her portion would be based on net proceeds, as computed by Saunders and Bianca. She said she and Henry had agreed that the gross settlement amount would be split three ways, with Henry to get one-third, his attorneys to get one-third, and Kathi to get one-third. She testified that Saunders knew from their conversations, “all the way up through the trial,” that the calculation was based on her receiving one-third *253 of the gross proceeds. She was particularly incensed that the disbursement sheet sent to her with the check showed that some of the deductions.were for the $500 per month spousal support that was awarded to her in the judgment of divorce, stating, “Why in the world would I want to be paying my own alimony ... ?” She also said that the disbursement sheet showed | useveral loans were made to Henry, including one for $6,000, plus $3,900 in interest. Unfortunately, the disbursement sheet was not introduced into evidence, so this court cannot review it.
Based on the wording of the confirmation letter between Saunders and Hamilton, the agreement was that Kathi’s one-third of the settlement proceeds would be calculated from Henry’s net recovery, after factoring in attorney’s fees and “litigation expenses.” The jurisprudence of this state, beginning with the case of Louisiana State Bar Ass’n. v. Edwins, 329 So.2d 437 (La.1976), has permitted attorneys to advance funds to their clients for minimal, necessary living expenses. See In re Maxwell, 00-3527 (La.3/30/01), 783 So.2d 1244, 1249. However, in Fountain v. Fountain, 93-2176 (La.App. 1st Cir. 10/07/94), 644 So.2d 733, this court examined a list of itemized expenses presented on a law firm’s invoice to determine whether they all qualified as “litigation expenses,” and found that many of those expenses, including payments of medical expenses, advances, and loans made to the client, were not true expenses of litigation. Id. at 743. Since April 2006, the circumstances and types of expenses that may be paid by an attorney to or on behalf of a client are listed in Rule 1.8 of the Rules of Professional Conduct,[5] which states, in pertinent part:
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except as follows.
(1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter, provided that the expenses were reasonably incurred. Court costs and expenses of litigation include, but are not necessarily limited to, filing fees; deposition costs; expert witness fees; transcript costs; witness fees; copy costs; photographic, electronic, or digital evidence production; investigation fees; related travel expenses; litigation related medical expenses; and any other case specific expenses directly related to the representation undertaken, including those set out in Rule 1.8(e)(3).[6]
| 1b(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
[[Image here]]
(4) In addition to costs of court and expenses of litigation, a lawyer may provide financial assistance to a client who is in necessitous circumstances, subject however to the following restrictions.
(i) Upon reasonable inquiry, the lawyer must determine that the client’s necessitous circumstances, without minimal financial assistance, would adversely affect the client’s ability to initiate and/or maintain the cause for *254 which the lawyer’s services were engaged.
[[Image here]]
(iv) Financial assistance under this rule may provide but shall not exceed that minimum sum necessary to meet the client’s, the client’s spouse’s, and/or dependents’ documented obligations for food, shelter, utilities, insurance, non-litigation related medical care and treatment, transportation expenses, education, or other documented expenses necessary for subsistence.
Rule 1.8(e)(5) refers to the three types of financial assistance provided by a lawyer to a client as “court costs, expenses of litigation, or for necessitous circumstances.” Clearly, although loans and advances may be made by an attorney to a client for subsistence and in necessitous circumstances, such loans and advances are never to be considered “litigation expenses.” Even if the letter agreement between Saunders and Hamilton were interpreted as limiting Kathi’s recovery, it did not eliminate her cause of action for a declaration that certain deductions made by Henry’s attorneys from her portion of the settlement were not “litigation expenses” and were not in accord with the divorce judgment or the confirmation letter.[7] Therefore, we conclude that Kathi has stated a cause of action against Saunders and Bianca.
With respect to Kathi’s right of action, having concluded that her petition states a valid cause of action, we conclude that she is the only person who has a legal interest in the settlement proceeds that are the subject of this litigation. Therefore, she has a right of action against Saunders and Bianca.
1 ^Declaratory Judgment Action/Improper Joinder/Jurisdiction
Louisiana Revised Statutes 13:1401 sets out the jurisdiction of The Family Court of East Baton Rouge. With reference to the matter before us, it states:
A. There is hereby established the family court for the parish of East Baton Rouge, which shall be a court of record with exclusive jurisdiction in the following proceedings:
(1) All actions for divorce, annulment of marriages, claims for contributions made by one spouse to the education or training of the other spouse, establishment or disavowal of the paternity of children, spousal and child support and nonsupport, and custody and visitation of children, as well as of all matters incidental to any of the foregoing proceedings, including but not restricted to the issuance of conservatory writs for the protection of community property, the awarding of attorney fees in judgments of divorce, the cumulation of and rendering executory of spousal and child support, the issuance of writs of fieri facias and garnishment under judgments of the court for spousal and child support and attorney fees, jurisdiction of which was vested in the Nineteenth Judicial District Court for the parish of East Baton Rouge prior to the establishment of the family court for the parish of East Baton Rouge.
(2)(a) All actions between spouses or former spouses for partition of commu *255 nity property and property acquired pursuant to a matrimonial regime.
[[Image here]]
(d) All actions between former spouses seeking the enforcement of a judicial or contractual settlement of claims provided in this Subsection. (Emphasis added).
The declaratory judgment articles of the Louisiana Code of Civil Procedure grant courts of record within their respective jurisdictions the authority to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. LSA-C.C.P. art. 1871. The purpose of these articles is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and they are to be liberally construed and administered. LSA-C.C.P. art. 1881. A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation, and the declaratory judgment will remove the uncertainty or terminate the dispute. Williams v. City of Baton Rouge, 02-0339 (La.App. 1st Cir.2/14/03), 848 So.2d 9, 13; Spicer v. Spicer, 10-1577 (La.App. 1st Cir.3/25/11), 62 So.3d 798, 800.
] i7Kathi’s petition was entitled: “Petition for Declaratory Judgment; To Enforce Divorce Judgment and Community Property Settlement; to Object to Calculation of Settlement; To Question and Contest Certain Expenses; and For Past-Due Spousal Support, Contempt, Attorney Fees and Court Costs.” She requested, in paragraph 8, that The Family Court define and declare her rights under the divorce judgment and compromise, release, and community property settlement rendered or filed in that court. Her former husband was named as a defendant. The Family Court in this case correctly concluded that it had subject matter jurisdiction over this matter, which involves an interpretation of a judgment and community property settlement between the spouses.
However, having found that Kathi had not stated a cause of action against Saunders and Bianca, the court sustained their exceptions raising the objection of improper joinder and lack of personal jurisdiction over Saunders and Bianca, neither of whom were involved in any way in the divorce or community property actions between Kathi and Henry. Kathi contends that this ruling was erroneous, basing her argument on the procedural rules governing actions for declaratory judgment, which state that all persons who have or claim any interest that would be affected by the declaration must be made parties, and no declaration may prejudice the rights of persons not parties to the proceeding. See LSA-C.C.P. arts. 1880 and 641; Blanchard v. Naquin, 428 So.2d 926, 928 (La.App. 1st Cir.), writ denied, 433 So.2d 162. (La.1983). Moreover, further relief based on a declaratory judgment or decree may be granted whenever necessary. LSA-C.C.P. art. 1878.
In this case, if The Family Court were to declare that Saunders and Bianca did not compute Kathi’s portion of the settlement proceeds in accord with the court’s judgment, it could then require them to recompute the amounts payable to her and to Henry, since Kathi has requested this additional relief in her petition. Such a computation could negatively affect the attorneys’ ability to recover, from Henry’s 11sportion of the settlement proceeds, the full amounts they paid to him as advances and loans. Under this rationale, it would appear that The Family Court would have personal jurisdiction over Saunders and Bianca and that their joinder was mandatory.
*256 However, based on the wording of LSA-R.S. 13:1401(A)(2)(d), which establishes and defines the exclusive, but limited, subject matter jurisdiction of The Family Court, it is clear that when the enforcement of a judicial or contractual settlement of claims is the issue before the court, its jurisdiction is limited to actions between former spouses. In a recent case, the Louisiana Supreme Court enforced this limiting language when one spouse died while the partition of community property was being litigated and the other spouse sought to substitute the decedent’s succession executrix as a defendant. In McCann v. McCann, 11-2434 (La.5/8/12), 93 So.3d 544, 549, the court stated:
The Constitution allows for the granting of limited jurisdiction to the family courts, and the legislature has specified the parameters of that jurisdiction for the Family Court for the Parish of East Baton Rouge in [LSA-R.S.] 13:1401. In [LSA-R.S.] 13:1401(A)(2)(a), the legislature vested the Family Court with “exclusive jurisdiction” over “[a]ll actions between spouses and former spouses for partition of community property and property acquired pursuant to a matrimonial regime.” After the death of Mr. McCann, Ms. McCann’s partition action was no longer an action to partition community property or property acquired pursuant to a matrimonial regime between former spouses; instead, it became an action to partition such movable and immovable property between Ms. McCann and the succession legatees. To give effect to the statutory and constitutional language, and not render any part of that statute meaningless, we must conclude the Family Court was divested of exclusive but limited subject matter jurisdiction when one of the former spouses died. To do otherwise would be to enlarge the limited jurisdiction of the Family Court beyond that contemplated by the legislature.
Id. at 550-51 (Emphasis added).
Jurisdiction over the subject matter of a controversy is “the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.” LSA-C.C.P. art. 2; Amin v. Bakhaty, 01-1967 (La.10/16/01), 798 So.2d 75, 80. The jurisdiction of a court over the subject matter of an action or proceeding |incannot be conferred by consent of the parties. A judgment rendered by a court that has no jurisdiction over the subject matter of the action or proceeding is void. LSA-C.C.P. art. 3; see also Bordelon v. Dehnert, 99-2625 (La.App. 1st Cir.9/22/00), 770 So.2d 433, 435, writ denied, 00-2923 (La.3/19/01), 787 So.2d 995. It is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. McGehee v. City/Parish of East Baton Rouge, 00-1058 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260.
As previously noted, The Family Court correctly stated that it had subject matter jurisdiction over this matter, which, after the court’s dismissal of all claims against Saunders and Bianca, was nothing more than an action between former spouses seeking the enforcement of a judicial or contractual settlement of claims. However, this court has concluded that Kathi did state a cause of action against Saunders and Bianca and that she is the only person who could bring these claims, and therefore, has a right of action against them. Based on the supreme court’s ruling in McCann, we must conclude that The Family Court’s subject matter jurisdiction does not extend beyond ICathi’s claims against Henry concerning past-due spousal *257 support and sanctions. By our ruling that the exceptions of no cause and no right of action should not have been sustained, this court’s judgment will divest The Family Court of its exclusive but limited subject matter jurisdiction over Kathi’s claims against Henry, Saunders, and Bianca concerning the computation of her portion of the settlement proceeds, requiring that portion of this lawsuit to be transferred to the Nineteenth Judicial District Court for further proceedings in accord with this judgment.
Since we have concluded that Kathi’s appeal had merit, we find no basis for an award of damages, attorney fees, and court costs for frivolous appeal, which were requested in the answer to appeal filed by Saunders and Bianca.
CONCLUSION
For the above reasons, we reverse the portion of the September 23, 2011 | ¡^judgment that sustained the exceptions raising the objections of no cause of action and no right of action, as well as that portion of the judgment denying the exception raising the objection of improper cumulation of actions. We vacate the portion of the judgment that granted the exceptions raising the objections of lack of personal jurisdiction and improper joinder of parties. We render judgment, decreeing that The Family Court is hereby divested of subject matter jurisdiction over the claims against Henry, Saunders, and Bianca regarding computation of the settlement proceeds, and remand this matter to The Family Court with orders to transfer that portion of this case to the Nineteenth Judicial District Court for further proceedings in accordance with this judgment.[8] We dismiss the answer to the appeal, and assess all costs of the appeal to Saunders and Bianca.
REVERSED IN PART AND VACATED IN PART. JUDGMENT RENDERED IN PART AND REMANDED WITH INSTRUCTIONS. ANSWER TO THE APPEAL DISMISSED.
WELCH, J., concurs.

. Hamilton discussed the matter with both parties and advised Henry to consult with an *246 independent attorney before signing any documents.

. Article 1871 states:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.
Article 1872 states:
A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

. Article 1880 states, in pertinent part:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

. Although Kathi’s testimony and the August 6, 2008 letter were admitted into evidence "for the sole purpose of the exception of no right of action,” her testimony and the letter had no relevance with respect to the exception of no right of action; both were clearly relevant only to the exception of no cause of action. Therefore, we have considered both in connection with the exception of no cause of action.

. Part IV of the Supreme Court order of January 4, 2006, which repealed and reenacted paragraph (e) of this rule, states that the rule changes would become effective on April 1, 2006, and would apply prospectively only.

. Rule 1.8(e)(3) lists certain costs that may be recoverable as litigation expenses with the client's consent, such as computerized legal research, long distance telephone costs, courier services, etc.

. We note also that the supreme court has recognized that, regardless of the outcome of the litigation, the client remains liable for repayment of all funds provided as financial assistance. See In re Fenasci, 09-1665 (La.11/20/09), 21 So.3d 934, 940. By making deductions for loans and advances made to Henry before computing Kathi's one-third of the settlement proceeds, the attorneys effectively reduced her portion by part of those advances, for which their client remained fully liable.

. This appeal and our judgment do not affect The Family Court’s continued subject matter jurisdiction over Kathi’s spousal support and sanctions claims against Henry.