13 So.3d 1196 (2009)
David C. FLETTRICH, A Professional Engineering Corporation
v.
TOURO INFIRMARY, and Sher Garner Cahill Richter Klein McAlister & Hilbert, LLC.
No. 2007-CA-1621.
Court of Appeal of Louisiana, Fourth Circuit.
May 20, 2009.
*1197 David A. Dalia, New Orleans, LA, for David C. Flettrich, A Professional Engineering Corporation.
James M. Garner, Debra J. Fischman, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., New Orleans, LA, for Touro Infirmary and Sher, Garner, Cahill, Richter, Klein, McAlister & Hilbert, L.L.C.
(Court Composed of Judge PATRICIA R. MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge Pro Tempore MOON LANDRIEU).
LANDRIEU, Judge.
The plaintiff, David C. Flettrich, a professional engineering corporation ("Mr. Flettrich"), appeals a summary judgment rendered in favor of the law firm, Sher Garner Cahill Richter Klein, McAlister & Hilbert, L.L.C. ("Sher Garner"), dismissing his claims against the firm. We reverse the trial court judgment and remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
Mr. Flettrich filed a petition for suit on open account, attorney's fees and unjust enrichment against Sher Garner and its client, Touro Infirmary ("Touro"). In his petition, Mr. Flettrich alleges that Sher Garner solicited his professional services as an expert consultant and witness for Touro, in the matter of Touro Infirmary v. Sizeler Architects, C.D.C. No. 02-6220, a suit brought by Touro for alleged design deficiencies in its Woldenberg Nursing Home/ Assisted Living Facility. Mr. Flettrich further alleges that Sher Garner solicited his professional services on several prior projects dating back to 2001.
In correspondence dated July 18, 2003, Mr. Flettrich submitted an invoice for $98,946.76 and its fee structure to Frank Folino ("Mr. Folino"), Vice President of Touro, for the services rendered on the Woldenberg litigation. In separate correspondence also dated July 18, 2003, he submitted the same invoice to Sher Garner, asking that Touro be billed.
In correspondence dated August 29, 2003, Mr. Flettrich's counsel, David Dalia ("Mr. Dalia"), made a formal demand for payment of the invoice enclosed in the earlier correspondence. Believing Mr. Flettrich's fees were exaggerated, Touro paid him $10,000.00 for the services rendered on the Woldenberg litigation. Having received no payment from either Touro or Sher Garner for the outstanding balance, Mr. Flettrich filed the instant action.
Sher Garner filed a motion for summary judgment arguing that Mr. Flettrich's claims against the firm should be dismissed for the following reasons: 1) Sher Garner was Touro's disclosed agent and, therefore, was exempt from liability under La. C.C. art. 3016; 2) Sher Garner and Mr. Flettrich never agreed to the price of his professional engineering services and, thus, no contract existed between them; and, 3) Sher Garner was not enriched by the services and, therefore, Mr. Flettrich has no claim for unjust enrichment. Mr. Flettrich opposed the motion.
Following a hearing, the trial court rendered a summary judgment in favor of Sher Garner. In written reasons for judgment, the trial court set forth his findings of fact, stating:
... Sher Garner is insulated from liability against Flettrich's claims. It is undisputed that Sher Garner is Touro's disclosed agent, Flettrich was on notice of this principal-agent relationship, Sher Garner did not bind itself personally to Flettrich, and Sher Garner did not exceed *1198 the scope of its authority granted by Touro.
Flettrich has failed evidence (sic) showing otherwise. Indeed, Flettrich has conceded in its Petition that Sher Garner is Touro's "agent." Further, Flettrich concedes in its paragraph 21 of its Petition that Sher Garner "instructed the Petitioner [Flettrich] to bill defendant Touro Infirmary, to the attention of Mr. Frank Folino." Additionally, the e-mail of May 26, 2003 from Sher Garner to Flettrich shows that the engagement of Flettrich's services, if any, was made by Touro and that Sher Garner merely acted as Tour's disclosed agent.
On appeal, Mr. Flettrich contends the trial court erred in granting summary judgment, because a genuine issue of material fact remains as to whether or not Sher Garner exceeded the scope of its authority granted by Touro with respect to the use of his professional services in the Woldenberg litigation.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. King v. Parish Nat'l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and should be construed to accomplish those ends. La. C.C.P. art. 966(A)(2). La. C.C.P. art. 966(C)(2) provides, in pertinent part:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C. art. 3016 provides that "[a] mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract." Pursuant to La. C.C. art. 3019, "a mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless the person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract."
Mr. Flettrich contends that even if Sher Garner was Touro's disclosed agent when the firm obtained his services as a forensic expert witness for Touro in the Woldenberg litigation, neither Touro nor the law firm ever expressed a "limit" as to the amount of time and/or money that he was to expend on the matter. As alleged in his original petition, Mr. Flettrich claims that Sher Garner initially solicited his services through a telephone conversation initiated by Martha Curtis, an attorney with Sher *1199 Garner. According to him, Sher Garner had used his services on three other projects[1] and, as a result of a dispute concerning his fees, he filed a collection suit against Sher Garner in February 2003. With that in mind, he advised Sher Garner that he would provide his services in the Woldenberg litigation only under certain conditions. Specifically, Mr. Flettrich would invoice his services on an hourly basis in accordance with his published forensic rates in effect at the time of each billing; the terms of payment would be net due upon receipt of invoice; and, interest would be charged for at the rate of 15% per annum on the unpaid balance (1.25% per month), commencing 10 days after the date of the invoice. Mr. Flettrich reminded Sher Garner that the three conditions were identical to the same conditions provided to the firm on February 19, 2003, in the Phillip Sowa residence project.[2]
Mr. Flettrich alleged that several days after the phone conversation, he received a letter dated March 21, 2003 from Sher Garner expressing its appreciation that he had agreed to serve as an expert in the Woldenberg litigation. The letter included the trial date, a copy of the trial court's scheduling order, and a request that he provide the firm with his initial verbal impression by May 2, 2003 and a written report by June 2, 2003. According to Mr. Flettrich, he received a second letter dated April 29, 2003 from Sher Garner, requesting his expert opinion regarding the allegations of negligence set forth in Touro's original and amended petitions in the Woldenberg case, particularly "the plumbing, electrical and mechanical aspects of the case." Enclosed with that letter were copies of the Touro's original and supplemental petitions; the agreement between Touro and Sizeler; change orders to the construction contract; and a set of the architectural drawings. Mr. Flettrich alleged that he received a third letter from Sher Garner on May 5, 2003, asking him to review a series of 18 letters and correspondences between Touro and other entities concerning the defective design and implementation of the "fire pump" at the Woldenberg Nursing Home/Assisted Living Facility prior to preparing his report. Mr. Flettrich further alleged that between April 25, 2003 and July 18, 2003, he did all the work that Sher Garner had authorized.[3]
In support of its motion for summary judgment arguing that it was acting as Touro's disclosed agent when it requested Mr. Flettrich to serve as an expert, Sher Garner submitted the affidavit of Mr. Folino, who averred the following. Touro hired Sher Garner to serve as Touro's disclosed agent and legal counsel in the Touro v. Sizeler Architects case. In connection with the Woldenberg litigation, Touro authorized Sher Garner to obtain the services of Mr. Flettrich to provide forensic expert witness consultation. On behalf of Touro, Sher Garner contacted Mr. Flettrich and requested that he provide "limited" forensic expert witness consultation in the case. In an e-mail dated May 26, 2003, Touro, via Sher Garner, *1200 directed Mr. Flettrich to send the bill for his "limited" services to Touro to the attention of Mr. Folino. Mr. Flettrich was instructed to provide Touro with a retention agreement between himself and Touro but failed to do so. Thus, Touro and Mr. Flettrich never executed a retention agreement. Mr. Flettrich did not reach an agreement with Touro, either individually or through its disclosed agent Sher Garner, regarding his rates, cost structure, and payment for his services. Mr. Flettrich did not provide Touro or Sher Garner with an itemization of his hourly rates or an itemization of his time spent on the Woldenberg case prior to submitting his invoice for payment in July 2003. Along with the affidavit, Sher Garner submitted a copy of the May 26, 2003 e-mail and a copy of October 30, 2003 letter to Sher Garner from Mr. Dalia, who acknowledged that Sher Garner was acting as Touro's agent when it engaged his client as an expert in the Woldenberg litigation.
In opposition to Sher Garner's motion for summary judgment, Mr. Flettrich submitted his own affidavit, which reiterated the allegations made in his petition. He also submitted copies of the written and e-mail correspondence between Sher Garner and himself regarding the Woldenberg litigation, and a copy of Touro's pre-trial witness list listing him as Touro's only engineering expert.
Although Sher Garner contends Mr. Flettrich's services were limited to the fire pump issue and relies on Mr. Folino's sworn statement that Sher Garner requested Mr. Flettrich to provide "limited" expert services, the evidence in the record does not support that statement. The correspondence between Sher Garner and Mr. Flettrich clearly indicates that Mr. Flettrich was asked to consider all the allegations of negligence against Sizeler asserted by Touro in its original and supplemental petitions, placing particular emphasis on the plumbing, electrical and mechanical issues. The allegations included design errors; design omissions; construction defects; failure to adequately staff the project; failure to provide CAD drawings; and failure to properly oversee the construction project, among others.
Notwithstanding Mr. Folino's affidavit, the record contains no evidence of the extent or scope of the mandate granted to Sher Garner by Touro upon which the trial court could determine Sher Garner did not exceed its authority in retaining and instructing Mr. Flettrich as to the work expected of him on the Woldenberg litigation. In the absence of such evidence, and considering the fact that Touro paid only $10,000.00 of the $98,946.76 that Mr. Flettrich alleged was owed to him and the fact that Sher Garner had used Mr. Flettrich as an expert on prior projects, we conclude that an unresolved factual issue still exists as to whether or not Sher Garner exceeded the scope of its authority granted by Touro with respect to the use of Mr. Flettrich's services in the Woldenberg litigation. Thus, we find the trial court erred in granting the motion for summary judgment and dismissing Mr. Flettrich's claims against Sher Garner.

CONCLUSION
Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LOMBARD, J., dissents with reasons.
LOMBARD, J., dissents with reasons.
In my view, the trial court properly granted Sher Garner's Motion for Summary Judgment dismissing Mr. Flettrich's claims against it. No genuine issues of material fact exist that would preclude *1201 summary judgment in this case. The facts in the record are clear that Sher Garner was acting on Touro's behalf, and as Touro's disclosed agent, in hiring Mr. Flettrich as an expert in the Woldenberg litigation. Moreover, there is no evidence in the record to indicate that Sher Garner exceeded the authority granted by Touro in conveying to Mr. Flettrich the content and scope of the expert services needed from him. Mr. Flettrich has not come forth with any facts to indicate that Sher Garner bound itself personally to compensate him for his expert services in the Woldenberg litigation. Thus, Sher Garner cannot now be held responsible for Touro's alleged failure to pay Mr. Flettrich for the work he performed. Accordingly, Sher Garner is entitled to summary judgment as a matter of law.
For these reasons, I respectfully dissent from the majority's opinion.
NOTES
[1] Mr. Flettrich alleged that between 2001 and 2003, Sher Garner had used his services on the FBI Regional Building project, the Marseilles Condominiums project, and the Phillip Sowa residence project. He also alleged that his fees of $18,348.75 on the Marseilles Condominiums project were billed to and paid by Sher Garner.
[2] Attached to the petition is a copy of the fee schedule that Mr. Flettrich provided to Sher Garner in the Phillip Sowa residence project.
[3] Mr. Flettrich attached to his original petition copies of the three letters, his billing invoice, and the spreadsheets and time sheets documenting his work and time expended on the litigation.