McClendon, j.
 

 12PIaintiff seeks review of a district court judgment granting an exception of no cause of action that dismissed Washington Parish from plaintiffs suit. For the following reasons, we affirm.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 On September 12, 2005, Washington Parish (the Parish) issued a declaration of emergency following Hurricane Katrina. Because of the nature of the disaster, the Parish was in immediate need of debris dump sites. The Parish Council’s President, Toye Taylor, and its Director of Pub-lie Works, Troy Barber, met with representatives of Pearl River Basin Land and Development Company, L.L.C. (Pearl River) and IED, Inc. (IED) in early September to discuss five potential dump sites within the Parish.
 

 On September 16, 2005, IED executed a Contract for Debris Management Services with the Parish for the removal of storm debris within the Parish’s jurisdiction. Pursuant to Paragraph 5.11 of the agreement, IED was required, to the extent possible, to give priority and utilize the resources of subcontractors within the Parish. IED subsequently executed contracts of lease with Pearl River for three Bogalusa disposal sites. Pearl River, which did not own the three disposal sites, sought to lease the sites from individual landowners.
 

 On September 16, 2005, the Parish also entered into a contract with Shaw Environmental, Inc. (Shaw) regarding project management and professional services in relation to the debris removal. Pearl River asserts that Shaw’s duties under said contract included providing management support to IED and ensuring that guidelines were being followed to procure FEMA funding.
 

 Pearl River alleges that on September 26, 2005, it “hand-delivered” a confirmation letter to Kenny Gatewood, the Parish’s Assistant District Attorney who was preparing the three leases, and to Eddie Dor-sett, a Shaw representative, for review, compliance, and approval of funding. Pearl River alleges that during the week of September 26, 2005, negotiations were conducted among the parties, including the Parish, IED, Shaw, and Pearl River, wherein an agreement was reached with regard to the amount of acreage that would be leased for each of the three sites as well as the |3term and amount paid per
 
 *592
 
 acre. Peaii River specifically alleges that during these negotiations, IED informed it that twenty to twenty-five acre sites were needed and that Pearl River should expect a $700.00 to $1,500.00 per acre payment for debris disposal over a term of six months. Thereafter, Pearl River contracted with the three landowners to provide the sites.
 

 Pearl River asserts that on September 28, 2005, Dorsett contacted Ronnie G. Pen-ton, Pearl River’s sole representative, and requested that the leases be signed immediately. Because Penton was out of town, Pearl River forwarded Dorsett a blank lease which bore Pearl River’s signature. Pearl River asserts that Penton instructed Dorsett to complete the terms of the three leases in accord with the negotiations that occurred during the week of September 26, 2005. Pearl River alleges that it was assured that IED would pay the leases and that reimbursement would be sought from FEMA in accordance with FEMA guidelines. However, Pearl River asserts that Dorsett lowered the total acreage to be utilized, paid only $625.00 per acre, and reduced the six-month term to three months.
 

 On August 28, 2007, Pearl River filed suit against the State of Louisiana through the Governor’s Office of Homeland Security and Emergency Preparedness (the State), the Parish, IED, and Shaw. Pearl River alleges that the Parish improperly monitored, selected, and screened contractors in violation of state and federal laws. Pearl River alleges that as a result of the breach of these duties, it spent thousands of dollars “out-of-pocket” and had not been properly reimbursed for the preparation of the sites, roads, and payments of said leases to the landowners for use of the land.
 

 In response, on March 6, 2008, the Parish filed a peremptory exception raising objections of no cause of action and prescription, asserting that it had no contractual privity with Pearl River and that Pearl River’s actions were based in tort and subject to a prescriptive period of one year. On March 10, 2008, Pearl River filed a supplemental and amending petition. On July 28, 2008, the district court found that Pearl River’s action was based on contract, sustained the Parish’s exception raising the objection of no cause of action, and dismissed the Parish from the suit. Pearl River has filed the instant appeal contending that the trial court erred in sustaining the exception raising [4the objection of no cause of action. Pearl River also contends that the trial court erred in dismissing its suit without allowing it to amend its petition.
 

 DISCUSSION
 

 The exception of no cause of action is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition are accepted as true in order to determine whether the law? affords a remedy on the facts alleged in the petition.
 
 Scheffler v. Adams and Reese, LLP,
 
 06-1774, p. 5 (La.2/22/07), 950 So.2d 641, 646. Because the exception of no cause of action raises a question of law and the trial court’s decision is based solely on the sufficiency of the petition, review of the trial court’s ruling on an exception of no cause of action is de
 
 novo. Id.
 
 The pertinent question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiffs favor, the petition states any valid cause of action for relief.
 
 Id.
 

 Pearl River contends that it has stated a cause of action against the Parish for breach of contract. However, no action for breach of contract may lie in the absence of privity of contract between the parties.
 
 Long v. Jeb Breithaupt Design
 
 
 *593
 

 Build Inc.,
 
 44,002, p. 19 (La.App. 2 Cir. 2/25/09), 4 So.3d 930, 941-42. Although Pearl River asserts that the Parish required its services to accomplish the debris removal, Pearl River does not allege that it had a contract with the Parish. Rather, Pearl River alleges that the Parish entered into contracts only with Shaw and IED. The fact that Pearl River may have a contract with IED and/or Shaw, who in turn, have separate contracts with the Parish, does not create a contract or privity of contract between Pearl River and the Parish.
 
 See Louisiana Paving Company, Inc. v. State Through Dept. of Highways,
 
 372 So.2d 245, 250 (La.App. 1 Cir.1979) (Although there is contractual privity between the owner and general contractor and between the general contractor and subcontractor, “[w]e recognize and adhere to the general rule that a subcontractor having no contractual relationship with an owner has no cause of action in contract against the owner.”)
 

 We also note that the Parish’s mere presence at the meetings between IED and Pearl River is not sufficient to make the Parish a party to any contract with Pearl River, | ^specially given that Pearl River alleges that IED informed it of the amount of acreage required, the expected amount of the payments per acre, and the expected term. Additionally, Pearl River alleges that Shaw, rather than the Parish, completed the blank leases signed by Pearl River and that IED was required to pay in accord with the terms therein and thereafter seek reimbursement from FEMA. Accordingly, Pearl River does not allege any facts to show that it had a contractual relationship with the Parish.
 

 Pearl River asserts that even if it had no privity of contract with the Parish, it nonetheless stated a cause of action against the Parish for detrimental reliance and/or as a third party beneficiary.
 
 [1]
 
 Pearl River contends that while the trial court found no privity between it and the Parish, it has plead that the Parish was present during the course of negotiations, set forth the requirements and conditions for the work to be performed, and advanced promises on obtaining the necessary funding in accordance with the Governor’s Office of Homeland Security and FEMA guidelines. Pearl River urges that while it can be argued that Pearl River was distanced from the FEMA funding process, the consideration Pearl River was promised was dependent upon contractual relationships amongst other parties, including, the relationship between the Parish and the State, who in compliance with the Stafford Act, would conform to the guidelines and submit funding requests to FEMA for the specific purpose of compensating Pearl River. Pearl River concludes that it has suffered damages through these contractual relationships.
 

 Pearl River notes that a party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the prom-
 
 *594
 
 isee’s reliance on the promise. LSA-C.C. art. 1967. To establish a claim for detrimental reliance, a party must prove three requirements by a preponderance of the evidence: (1) a | ^presentation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance. LSA-C.C. art. 1967;
 
 Suire v. Lafayette City-Parish Consol. Gov’t,
 
 2004-1459, p. 31 (La.4/12/05), 907 So.2d 37, 59. Although Pearl River asserts that it should be allowed to proceed against the Parish on the basis of a detrimental reliance claim, Pearl River does not attribute any statement or action upon which it relied to the Parish. Rather, a review of the petitions reveal that the only statements upon which it allegedly relied were statements made by representatives of IED and Shaw. Accordingly, we find that Pearl River has failed to state a cause of action against the Parish for detrimental reliance.
 

 Pearl River also contends that it has alleged facts sufficient to state a cause of action as a third party beneficiary, who has the right to demand performance from the promisor.
 
 See
 
 LSA-C.C. arts. 1978 and 1981. Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation
 
 pour autnd. Concept Design, Inc. v. J.J. Krebs & Sons, Inc.,
 
 96-1295, p. 5 (La.App. 4 Cir. 3/19/97), 692 So.2d 1203, 1205. A stipulation
 
 pour autnd
 
 is never presumed and the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear.
 
 Paul v. La. State Employees’ Group Benefit Program,
 
 99-0897, p. 5 (La.App. 1 Cir. 5/12/00), 762 So.2d 136, 140. Moreover, the third party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract.
 
 Paul,
 
 99-0897 at p. 6, 762 So.2d at 140.
 

 Although the terms of the prime contract between the Parish and IED required IED to give priority and utilize subcontractors within the Parish, such provision is not sufficient to be a clear expression of intent to benefit Pearl River. Also, Pearl River does not allege that its relationship with IED formed the consideration for a condition of the prime contract between IED and the Parish. Rather, the benefits Pearl River may have obtained were merely incidental to the prime contract, and there was no stipulation
 
 pou/r autrui
 
 benefitting Pearl River.
 
 Accord Concept Design, Inc.,
 
 96-1295, 692 So.2d 1203. Accordingly, Pearl River has failed to state a cause of action as a third party beneficiary of the Parish’s contract with either IED or Shaw.
 

 17Pearl River also contends that it was denied an opportunity to amend its pleadings to clarify its cause of action against the Parish. When the grounds of an objection pleaded by peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, the action shall be dismissed. LSÁ-C.C.P. art. 934. The decision to allow amendment of a pleading to cure the grounds for a peremptory exception is within the discretion of the trial court.
 
 FIA Card Services, N.A. v. Gibson,
 
 43,131, p. 7 (La.App. 2 Cir. 3/19/08), 978 So.2d 1230, 1235. Pearl River has failed to demonstrate that the grounds for the exception of no cause of action can be removed by a second amendment of the petition. According^, the trial court did not abuse its discretion in declining to allow amendment of the pleadings.
 

 
 *595
 
 For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against Pearl River.
 

 AFFIRMED.
 

 [1]
 

 . The Parish contends that this court should not consider whether any other theories exist beyond the breach of contract claims insofar as Pearl River did not address these theories during the course of the trial court proceedings. However, we note that in reviewing an exception of no cause of action, this court must consider pleadings of fact in the petition and determine whether a remedy may be obtained in light of these allegations under any possible theory of recovery.
 
 See Mott v. River Parish Maintenance, Inc.,
 
 432 So.2d 827, 830 (La.1983) and
 
 Hoskin v. Plaquemines Parish Gov't,
 
 98-1825, p. 11 (La.App. 4 Cir. 8/4/99), 743 So.2d 736, 742.