2015-1377 (La.App. 1 Cir. 10/31/16)

**Troy A. LANDRY; Jacob A. Landry; and Troy Landry Productions, LLC**

v.

**BASE CAMP MANAGEMENT, LLC; Creative Media Solutions, LLC; the Maughan Law Firm, LLC; and Roy H. Maughan, Jr.**

**2015 CA 1377**

Court of Appeal of Louisiana, First Circuit.

OCTOBER 31, 2016

Roy H. Maughan, Jr., Namisha D. Patel, Joshua D. Roy, Baton Rouge, Louisiana, Counsel for Third-Party Plaintiffs-Appellants, Base Camp Management, LLC; Creative Media Solutions, LLC; The Maughan Law Firm, LLC; and Roy H. Maughan, Jr.

James H. Gibson, Stacy N. Kennedy, Lafayette, Louisiana, Counsel for Third-Party Defendants-Appellees, Alfred S. Lippman and Lippman & Mahfouz, LLC

and Fredrick R. Tulley, Baton Rouge, Louisiana

BEFORE: HIGGINBOTHAM, THERIOT, AND CHUTZ, JJ.

CHUTZ, J.

At issue in this case is whether any cause of action lies against an adversary's attorney for exceeding the scope of the mandate given to the attorney by his clients, where no intent or malice has been alleged. We find no cause of action is stated under these circumstances.

## FACTS AND PROCEDURAL HISTORY

The following facts are not disputed. In 2010, the successful alligator hunters and seafood fishermen in Assumption Parish who star in the television series, *Swamp People*, Troy Landry and Jacob Landry, and company, Troy Landry Productions, LLC ["the Landrys"], retained Roy H. Maughan, Jr., The Maughan Law Firm, LLC, Base Camp Management, LLC, and Creative Media Solutions, LLC ["the Maughan parties"], to assist them with their entertainment related pursuits. The first contractual agreement between the Landrys and Maughan parties was executed in 2010 ["Maughan I"], the same year that the *Swamp People* series commenced to air.

By 2011, the Landrys wished to renegotiate their contract to adjust their fee agreement with the Maughan parties. The Landrys retained attorney, Alfred S. Lippman, to represent them in the negotiations. The negotiations began in June 2011 and continued until October 2011, when a new professional services agreement was reached by the Landrys and Maughan parties ["Maughan II"]. The terms of Maughan II included an arbitration clause, whereby the parties agreed to arbitrate any disputes that may arise out of the contract.

A year later, in November 2012, the Landrys terminated Maughan II. The Maughan parties subsequently sought payment for services they claimed were still owed to them under the terms of the contract.

This litigation began in June 2013, when the Landrys filed a Petition for Declaratory Judgment against the Maughan parties in the district court, seeking to void Maughan II, *inter alia*, on grounds the contract contained an unenforceable arbitration clause.[1] According to the Landrys, the arbitration clause was unenforceable because it lacked the requisite disclosures

---

1. The Landrys also contended that Maughan II was unenforceable because it improperly limited the Landrys' right to terminate the attorney-client relationship; set forth an unreasonable fixed percentage based fee arrangement for legal and non-legal work; and improperly permitted fee sharing among attorneys and non-attorneys.

about the effect the attorney's arbitration clause would have on their rights. The disclosure requirements cited by the Landrys stem from a Louisiana Supreme Court decision that was issued after Maughan II was executed, which requires attorneys to make certain disclosures to their clients in order to enforce an arbitration clause that is contained within an attorney-client retainer agreement. See *Hodges v. Reasonover*, 2012–0043 (La. 7/2/12), 103 So.3d 1069, cert. denied, —— U.S. ——, 133 S.Ct. 1494, 185 L.Ed.2d 548 (2013).

The Maughan parties met the petition with an exception of prematurity, contending that the issues raised therein were subject to Maughan II's arbitration provision and therefore had to be arbitrated before suit could be filed. After conducting a full evidentiary hearing on the matter, the district court denied the exception. In reasons for judgment, the district court found that it was incumbent on Mr. Lippman, as the Landrys' attorney, to advise them of the full consequences of the arbitration clause. The court found that Mr. Lippman's failure to make the disclosures rendered the arbitration clause void and unenforceable.

After the district court found that Maugham II's arbitration clause was unenforceable, the Maughan parties filed a third-party petition against Mr. Lippman and his law firm, Lippman & Mahfouz, LLC [collectively referred to as "Attorney Lippman"], alleging that Attorney Lippman breached the duties he owed his clients, the Landrys, by failing to advise them that Maughan II contained an arbitration agreement and by failing to advise them of the legal effects of the arbitration clause.[2]

The Maughan parties then alleged that they were "direct, identifiable, and intended beneficiaries" of Attorney Lippman's representation of the Landrys, such that they were entitled to recover damages as a result of the breach.

In response to the suit, Attorney Lippman filed exceptions raising the objections of no right and no cause of action, asserting, among other things, that the petition failed to state a cause of action in legal malpractice as the petition failed to allege that any attorney-client relationship existed between Attorney Lippman and the Maughan parties.

Before the exceptions were heard, the district court granted the Maughan parties leave to file an amended third party petition ["the amended petition"]. Therein, the Maughan parties added a new allegation that Attorney Lippman exceeded the scope of the authority that was given to him by his clients, the Landrys, by including an arbitration agreement in Maughan II without obtaining the Landrys' authorization to do so; by committing the Landrys to a for-cause termination provision when they were not authorized to do so; by committing the Landrys to an allegedly excessive fee for the services the Maughan parties would provide; by committing the Landrys to pay a combined fee for services rendered by the Maughan Law Firm and Base Camp Management; and by committing the Landrys to every other complained of grievance enumerated in the Landrys' petition for declaratory judgment. Consequently, the Maughan parties alleged that Attorney Lippman was liable to them—the intended beneficiaries of the Landrys' engagement of Attorney Lipp-

---

2. Base Camp Productions, LLC, was also named as a plaintiff in the third-party petition, even though it was never named as a defendant in the principal action brought by the Landrys against the Maughan parties. At-

torney Lippman objected to its inclusion, and the Maughan parties subsequently omitted any reference to Base Camp Productions when they filed their amended third-party petition.

man—under La. C.C. article 3019, which provides that a mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract. The Maughan parties did not allege any facts tending to suggest that Attorney Lippman committed any intentional torts.

Attorney Lippman filed new exceptions raising the objections of no right and no cause of action in response to the amended petition, contending that the Maughan parties also lacked a right or cause of action under the theory of mandate. After a hearing, the district court granted Attorney Lippman's exceptions in a judgment signed March 27, 2015. The March 27th judgment granted the Maughan parties 30 days to amend their pleading, but the Maughan parties did not file an amended petition within that timeframe. Subsequent to the expiration of the 30-day period, the district court entered a final judgment dismissing the Maughan parties' claims against Attorney Lippman with prejudice. The Maughan parties have appealed the judgment sustaining Attorney Lippman's exceptions.

## DISCUSSION

On appeal, the Maughan parties present two arguments in support of their contention that they have stated a cause of action against Attorney Lippman. First, they argue that Louisiana courts have long recognized a cause of action brought against an attorney by a third-party, non-client, when the attorney exceeds the limits of his agency. Second, they argue that the First Circuit has previously recognized that a negligence cause of action may lie against an attorney when brought by a non-client, third-party beneficiary of the attorney's work. See *Blanchard v. Blanchard*, 2012–0106 (La.App. 1 Cir.

12/31/12), 112 So.3d 243, 251, writ denied, 2013–0488 (La. 4/12/13), 111 So.3d 1013. In presenting these arguments, the Maughan parties attempt to distinguish the Louisiana Supreme Court's decision in *Montalvo v. Sondes*, 93–2813 (La. 5/23/94), 637 So.2d 127, 131, which held that a non-client must plead facts sufficient to state a cause of action in intentional tort in order to state a cause of action against an adversary's attorney.

We will begin our analysis by considering the merits of the peremptory exception raising the objection of no cause of action.

### No Cause of Action

Since the exception of no cause of action raises a question of law and the district court's decision is based solely on the sufficiency of the petition, appellate courts review rulings on an exception of no cause of action *de novo*. *Louisiana State Bar Association v. Carr and Associates, Inc.*, 2008–2114 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, 167, writ denied, 2009–1627 (La. 10/30/09), 21 So.3d 292. The exception is triable on the face of the pleadings, and for purposes of resolving the exception, the well-pleaded facts in the petition are accepted as true in order to determine whether the law affords a remedy on the facts alleged in the petition. *Id.* The pertinent question is whether, construing the petition in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. *Id.*

In Louisiana, the general rule is that a non-client cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. *Penalber v. Blount*, 550 So.2d 577, 581 (La. 1989). The purpose of this rule is to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. *Id.* After all, the attorney's paramount

duty is to his client. *Id.* Rather, a petition must allege facts showing specific malice or an intent to cause direct harm on the part of the attorney in order to state a cause of action against an adversary's attorney. See *Montalvo*, 637 So.2d at 130. In both *Penalber* and *Montalvo*, the Supreme Court cited the adversarial relationship between the parties as grounds for limiting the causes of action that can be pled against an adversary's attorney.

Louisiana courts have only recognized the existence of a cause of action brought by a non-client against an attorney, where no intentional tort was alleged, in a small handful of cases; many were decided before *Montalvo*, supra. See *Succession of Killingsworth*, 292 So.2d 536, 543 (La. 1973) (*pre-Montalvo decision where the Louisiana Court found that a lawyer's failure to use reasonable care in drafting a will could subject him to a claim for damages brought by an injured legatee* ); *Capital Bank & Trust Company v. Core*, 343 So.2d 284, 287–88 (La. App. 1st Cir. 1977), writ not considered, 345 So.2d 61 (La. 1977) (*pre-Montalvo decision where the First Circuit found that a bank stated a cause of action in malpractice against an attorney that issued an erroneous title opinion, citing the fact that the bank relied upon the title opinion to make the loan and the fact that the attorney knew the bank would be relying on his title opinion* ); *Dupre v. Marquis*, 467 So.2d 65, 68 (La. App. 3d Cir. 1985), writ denied, 472 So.2d 38 (La. 1985) (*pre-Montalvo decision where the Third Circuit recognized the existence of a defamation cause of action that was brought against an adversary's attorney* ); *Anderson v. Collins*, 26,142 (La.App. 2 Cir. 1/6/95), 648 So.2d 1371, 1378, writs denied, 95–0629 (La. 4/21/95), 653 So.2d 576 (*post-Montalvo decision where the court recognized the existence of a cause of action that was brought by a new succession representative against the attorney retained by the prior*

succession representative; in reaching this conclusion, the court emphasized the fact that the succession representative was not an adversary to the heirs* ); and *Fettrich v. Touro Infirmary*, 2007–1621 (La. App. 4th Cir. 5/20/09), 13 So.3d 1196, 1200 (*post-Montalvo decision where an expert witness sued the law firm that solicited his services on behalf of a client of the law firm after the client failed to pay the entirety of the expert's bill; the expert witness alleged that the law firm exceeded the scope of the authority granted to it by its client* ). See also *Blanchard*, 112 So.3d at 251 (*post-Montalvo decision where the First Circuit found that the plaintiff had stated a cause of action in negligence and intentional tort against her ex-husband's personal injury attorneys with regard to the manner in which the attorneys calculated her portion of the settlement proceeds; in reaching its decision, the court emphasized that the plaintiff was not an adversary of her ex-husband in the personal injury litigation* ). The Supreme Court in *Penalber* addressed two of the foregoing cases, *Succession of Killingsworth* and *Capital Bank*, distinguishing them on the basis that the suing non-clients therein were not adversaries, but third-party beneficiaries. *Penalber*, 550 So.2d at 578, n.2.

Since *Montalvo*, no Louisiana court has recognized the existence of a cause of action that was brought by a non-client against an adversary's attorney without alleging the *Montalvo* requirements of intent to cause direct harm and malice. We do not see any indication in the jurisprudence that any exception to the general rule set forth in *Montalvo* should be made for non-clients suing their adversaries' attorneys on grounds that the adversaries' attorneys exceeded the scope of authority that was given to them by their clients. Further, we do not find that it would be in the interests of justice to create an excep-

tion herein, where the essence of the Maughan parties' claims against Attorney Lippman is that he failed to foresee that the Louisiana Supreme Court would subsequently issue new disclosure requirements for attorney-client retainer agreements that include arbitration clauses. See *Hodges*, 103 So.3d at 1077.

◼ Rather, we find that the requirements of *Montalvo* squarely apply herein because the Maughan parties and the Landrys were adversaries with regard to their negotiation of the fee agreement that would be paid to the Maughans under Maughan II. This adversarial relationship is evidenced by the fact that the Landrys hired their own attorney to represent them in the contract negotiations. Further, we find that the requirements of *Montalvo* apply herein because the Maughan parties do not state a cause of action as third-party beneficiaries of the legal services contract between Attorney Lippman and the Landrys, as the Maughan parties fail to point to any actual provision in the legal services [9]contract between Attorney Lippman and the Landrys that manifests a clear expression of intent to benefit the Maughan parties.[3] See **Canal/Claiborne, Ltd. v. Stonehedge Development, LLC,** 2014–0664 (La. 12/9/14), 156 So.3d 627, 633. See also **Pearl River Basin Land and Development Co., L.L.C. v. State ex rel. Governor's Office of Homeland Security and Emergency Preparedness,** 2009–0084 (La.App. 1 Cir. 10/27/09), 29 So.3d 589, 594.

Under **Montalvo**, the Maughan parties' amended petition had to allege that Attorney Lippman acted with malice or an intent to cause direct harm to the Maughan parties in order to state a cause of action against Attorney Lippman. As the amended petition clearly lacks any allegations suggesting that Attorney Lippman acted with malice or an intent to cause direct harm to the Maughan parties, we conclude that the amended petition fails to allege facts sufficient to state a cause of action against Attorney Lippman in intentional tort. Accordingly, we find no error in the district court's grant of Attorney Lippman's exception raising the objection of no cause of action and dismissal of the claims asserted against him.[4],[5]

### DECREE

For the reasons assigned, we affirm the March 27, 2015 judgment of the district court, granting the exception of no cause of action in favor of Alfred S. Lippman and Lippman & Mahfouz, LLC, and dismissing, with prejudice, the claims of The Maughan Law Firm, LLC, Roy H. Maughan, Jr., Base Camp [10]Management, LLC, and Creative Media Solutions, LLC, against Alfred S. Lippman and Lippman & Mahfouz, LLC. All costs of this appeal are assessed to The Maughan Law Firm, LLC, Roy H. Maughan, Jr., Base Camp Management, LLC, and Creative Media Solutions, LLC.

**AFFIRMED.**

Theriot, J. Dissents with reasons.

---

**3.** While a Court must accept facts alleged in the petition without reference to any extraneous supporting or controverting evidence when deciding whether a petition states a cause of action, the mere conclusion of the pleader unsupported by facts does not set forth a cause of action. **Montalvo,** 637 So.2d at 131.

**4.** In light of our decision with regard to the exception raising the objection of no cause of action, we pretermit consideration of the exception raising the objection of no right of action.

**5.** Because the Maughan parties failed to comply with the lower court's order to amend, the action must be dismissed. See La. C.C.P. art. 934.

THERIOT, J., dissenting and assigning reasons.

I respectfully disagree with the majority's decision to affirm the trial court's judgment sustaining the peremptory exception of no cause of action in favor of the appellees, Alfred S. Lippman and Lippman & Mahfouz, LLC ("the Lippman parties"), and ordering the dismissal, with prejudice, of the third-party petition filed by the appellants, Roy H. Maughan, Jr.; The Maughan Law Firm, LLC; Base Camp Management, LLC; and Creative Media Solutions, LLC ("the Maughan parties"). I believe that the Maughan parties pleaded sufficient facts to state a cognizable negligence cause of action against the Lippman parties.

As the majority correctly notes, the fundamental facts of this case are not presently in dispute. In 2010, the Maughan parties first contracted with the original plaintiffs in this matter, Troy A. Landry, Jacob A. Landry, and Troy Landry Productions, LLC ("the Landrys"), to provide the Landrys with professional assistance in various entertainment-related matters. In 2011, the Landrys sought to re-negotiate the terms of their agreement with the Maughan parties and retained the Lippman parties to serve as their legal representatives in their contract negotiations with the Maughan parties. Following a period of negotiation between the Lippman parties and the Maughan parties, in October of 2011, the Landrys and the Maughan parties agreed upon the terms of a new contract, identified on appeal as "Maughan II," which contained an arbitration clause whereby the parties agreed to arbitrate any disputes involving the contract.

Thereafter, the Landrys sought to terminate Maughan II. The Landrys argued, in relevant part, that Maughan II contained an unenforceable arbitration clause, and, in June of 2013, this litigation commenced. In response to an exception of prematurity submitted by the Maughan parties, the trial court denied the exception, finding that the arbitration clause was null and void. The trial court determined that the Lippman parties failed to make certain disclosures required by law to the Landrys, which the trial court found rendered the arbitration clause to be without legal effect.

In September of 2014, after the trial court ruled on the enforceability of the subject arbitration clause, the Maughan parties filed a third-party petition for damages against the Lippman parties. The Maughan parties argued that the Lippman parties had breached their professional obligations to the Landrys, which resulted in the invalidity of Maughan II, and asserted that the Lippman parties were thus liable to them for damages as a result of the invalidity of the contractual provisions. Subsequently, in December of 2014, the Maughan parties filed an amended third-party petition for damages, wherein the Maughan parties restated and particularized their claims against the Lippman parties. In response to the original and amended petition, the Lippman parties submitted exceptions of no right of action and no cause of action. Following a hearing, the trial court granted the exceptions and the majority herein affirms the trial court's judgment sustaining the exception of no cause of action.

Insofar as this matter comes before us on an exception of no cause of action, before analyzing the applicable substantive law, it bears emphasizing that, for purposes of the peremptory exception, a cause of action is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. **Bayou Liberty Ass'n, Inc. v. St. Tammany Parish Council,** 05–1228 (La. App. 1 Cir. 6/9/06), 938 So.2d 724, 728. The

function of the exception is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. **Id.**

Generally speaking, no evidence may be introduced to support or controvert an exception of no cause of action. See La. C.C.P. art. 931. In addition, all facts pleaded in the petition must be accepted as true, and any doubts must be resolved in favor of the sufficiency of the petition to state a cause of action. **Bayou Liberty Ass'n, Inc.,** 938 So.2d at 728. If the petition alleges sufficient facts to establish a case cognizable in law, the exception must fail. Furthermore, when a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. **Id.**

We review a trial court's judgment sustaining a peremptory exception of no cause of action using the *de novo* standard of review. **Bayou Liberty Ass'n, Inc.,** 938 So.2d at 728. This is because the exception raises a question of law and is based solely on the sufficiency of the petition. In reviewing the petition to determine whether a cause of action is stated, we must, if possible, interpret it to maintain the cause of action. Moreover, any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. **Id.**

In the matter *sub judice*, the correctness of the trial court's judgment turns upon the nature of the relationship between the Maughan parties and the Landrys. Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on behalf of his client. Thus, a non-client cannot ordinarily hold his adversary's attorney personally liable for malpractice or negligent breach of a professional obligation. **Montalvo v. Sondes,** 93–2813 (La. 5/23/94), 637 So.2d 127, 130. The intent of this rule is not to reduce an attorney's responsibility for his work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client. **Penalber v. Blount,** 550 So.2d 577, 581 (La. 1989).

In **Penalber,** 550 So.2d at 578, the Louisiana Supreme Court found that an attorney can be held accountable to a non-client only for intentional tortious conduct, such as the knowing violation of a prohibitory statute. However, in that case, the court cautioned that its opinion "d[id] not address situations where the non-client is not an adversary, but a third-party beneficiary." **Penalber,** 550 So.2d at 578 n.2 (citing **Capital Bank & Trust Co. v. Core,** 343 So.2d 284 (La. App. 1 Cir.), writs denied, 345 So.2d 61 and 345 So.2d 504 (La. 1977); **Succession of Killingsworth,** 270 So.2d 196 (La. App. 1 Cir. 1972), aff'd in part and rev'd in part, 292 So.2d 536 (La. 1973)).

Therefore, in accordance with prior jurisprudence, we have previously held that, notwithstanding the lack of an attorney-client relationship, "non-client parties, whose interests as third-party beneficiaries of the attorney's actions are negatively affected by his substandard work, can have a negligence cause of action against the attorney." **Blanchard v. Blanchard,** 12–0106 (La.App. 1 Cir. 12/31/12), 112 So.3d 243, 251, writ denied, 13–0488 (La. 4/12/13), 111 So.3d 1013. Accord **Joyner v. Wear,** 27,631 (La.App. 2 Cir. 12/6/95), 665 So.2d 634, 640 n.1, writs denied, 96–0040 and 96–0042 (La. 2/28/96), 668 So.2d 370.

In today's opinion, the majority affirms the trial court's judgment sustaining the exception of no cause of action, reasoning the Maughan parties and the Landrys were adversaries during the course of the Maughan II contract negotiations. The majority concludes that the Maughan parties did not state a cause of action as the

intended third-party beneficiaries of the retention of the Lippman parties by the Landrys. In support of its finding on the latter point, the majority cites **Canal/Claiborne, Ltd. v. Stonehedge Develop., LLC,** 14–0664 (La. 12/9/14), 156 So.3d 627, 633 and **Pearl River Basin Land and Develop. Co., LLC v. State ex rel. Governor's Office of Homeland Sec. and Emergency Preparedness,** 09–0084 (La.App. 1 Cir. 10/27/09), 29 So.3d 589, 594.

The cases relied upon by the majority do not address the existence of a cause of action by a non-client against an attorney. Rather, these cases address *ex contractu* claims by a third-party to a third-party beneficiary contract, see La. C.C. arts. 1978–82, which is known in Louisiana law as a *stipulation pour autrui*.[1] For example, in **Canal/Claiborne, Ltd.,** 156 So.3d at 633, the Louisiana Supreme Court found no merit to a third-party claimant's assertion that it was a third-party beneficiary of a sublease between the defendant and a separate entity. There, the court explained that the jurisprudence sets forth three criteria to determine whether a contracting party has provided a benefit to a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. **Id.** (citing **Joseph v. Hospital Serv. Dist. No. 2 of Parish of St. Mary,** 02–2364 (La. 10/15/06), 939 So.2d 1206, 1212) (finding the claimant did not meet his burden of proof because the contract in question did not manifest a clear intent to benefit the third party). See also **Pearl River Basin Land and Develop. Co.,** 29 So.3d at 594 (rejecting a claimant's argument that it

alleged facts sufficient to state a cause of action as a third-party beneficiary with the right to demand contractual performance from the promisor).

The majority fails to recognize the existence of directly relevant jurisprudence upholding the validity of certain *ex delictu* claims brought by a non-client against an attorney, which claims are not subject to the tripartite test set forth in **Canal/Claiborne, Ltd.,** 156 So.3d at 633. For example, in **Succession of Killingsworth,** 270 So.2d at 204–05, which was cited with approval in **Penalber,** 550 So.2d at 578 n.2, the question was presented whether legatees under a will that had been declared invalid could state a cause of action against the attorney who drafted the will. Upon initial review, this court found that the legatees could state a cause of action against the attorney, but found that the engagement of the attorney to confect the will in favor of the legatees did not constitute a *stipulation pour autrui*. There, we explained that we "prefer to hinge our decision on [La.] C.C. [a]rt. 2315[,]" which we found to be "sufficiently broad in its scope to encompass the claims asserted ... by the legatees." **Succession of Killingsworth,** 270 So.2d at 205.

Following rendition of our decision in that matter, the Louisiana Supreme Court granted writs. The court reversed our decision in part, finding that the attorney's agreement to confect the will constituted a valid *stipulation pour autrui*, such that the aggrieved legatees could recover from the attorney who confected the will on that basis. See **Succession of Killingsworth,** 292 So.2d at 543. However, the court also affirmed our decision in part, finding that

---

1. Louisiana Civil Code art. 1978 states that a contracting party may stipulate a benefit for a third person, called a third-party beneficiary, and provides that once the third-party beneficiary has manifested his intention to avail himself of the benefit, the parties may not

dissolve the contract by mutual consent without the beneficiary's agreement. Louisiana Civil Code art. 1981 states, in relevant part, that the stipulation gives the third-party beneficiary the right to demand performance from the promisor.

the legatees also had a negligence cause of action against the attorney pursuant to La. C.C. art. 2315. See **Succession of Killingsworth**, 292 So.2d at 543 ("Furthermore, we believe, as did the Court of Appeal in this case, that [La.] C.C. [a]rt. 2315 provides a basis for recovery as well."). In affirming our decision concerning the existence of a negligence cause of action, the court noted that in the confection of a will, the attorney was well aware that the benefit bestowed upon the legatees was contingent upon compliance with the prescribed formalities and that the consequence of the attorney's failure to observe these formalities is foreseeable. Accordingly, the court explained, if a bequest is rendered invalid as a result of an attorney's negligence, "the [attorney] may be held liable in damages to the injured legatee in tort." **Succession of Killingsworth**, 292 So.2d at 543.

More recently, in **Blanchard**, 112 So.3d at 249-54, this court considered whether a claimant/ex-wife had stated a cause of action against her ex-husband's personal injury attorneys, whom she alleged committed negligence in their computation of her portion of certain settlement proceeds incorporated into the couple's community property settlement agreement. In that case, we did not require evidence of a valid *stipulation pour autrui*, but rather looked at the ex-wife's petition, on its face, and determined that the ex-wife was "not asserting a claim against an adversary's attorney; she was not an adversary to [her ex-husband] in his maritime personal injury litigation." **Blanchard**, 112 So.3d at 251. We explained that the ex-wife was "a nonclient party for whose benefit the split of the settlement proceeds was intended," and "we conclude[d] that [the ex-wife]

ha[d] asserted a cause of action for negligence against the attorneys in their computation of her portion of the settlement proceeds." **Blanchard**, 112 So.3d at 252.[2]

Turning to the operative allegations in this case, in their original petition for damages, the Maughan parties stated that the Lippman parties were "retained by [the Landrys] for the specific purpose of rendering legal services relative to the renegotiation of an existing contract between the Maughan [parties] and the Landry[s]. . . ." In paragraph twelve, the Maughan parties claimed that during the course of the contract negotiations, the Lippman parties represented "that the Landry[s] . . . required the inclusion of [the unenforceable] arbitration clause in [Maughan II]." In paragraph fourteen, the Maughan parties stated that the Landrys had not requested the inclusion of the arbitration clause or been advised of its inclusion or legal significance, that the Lippman parties' contrary representation was "false and misleading" and that "no adequate or reasonable basis existed to justify or support such statement." Furthermore, in paragraph forty-seven, the Maughan parties stated that the Lippman parties "knew or should have known that as the attorneys for the Landry[s] . . . the Maughan [parties] were direct, identifiable, and intended beneficiaries of their representation[.]"

In their amended third-party petition for damages, the Maughan parties restated and particularized the allegations set forth in their original petition. For example, in paragraph twenty-three of the amended petition, the Maughan parties asserted that the Lippman parties "knew that the specific purpose and primary interest of

---

2. It should be noted that in **Blanchard**, 112 So.3d at 252, this court went on to find that the ex-wife also stated a cause of action against her ex-husband's personal injury at-

torneys in intentional tort; in this case, I acknowledge that the well-pleaded allegations do not similarly establish a cause of action sounding in intentional tort.

their engagement by the Landry[s] ... was to re-negotiate an agreement between the Maughan [parties] and the Landry[s] ... and that the Maughan [parties] were the intended identifiable beneficiaries of the engagement." In paragraph twenty-five, the Maughan parties stated that "the Landry[s] ... testified that they expected [the] Lippman [parties] to draft a lawful, valid and enforceable agreement." In addition, the Maughan parties specifically alleged the Lippman parties exceeded the scope of their authority in the course of their representation of the Landrys with respect to the inclusion of the subject arbitration clause; in paragraph twenty-nine, the Maughan parties stated that they were entitled to rely upon the fact that the Lippman parties "were acting within the scope of their authority ... would abide by their clients' informed decisions ... and only take such action as was authorized by the Landry[s] ... to carry out the representation."

In my opinion, interpreting the allegations set forth in the original and amended petition in the light most favorable to the Maughan parties, as we must on the exception of no cause of action, the Maughan parties pleaded sufficient facts to establish a cognizable negligence cause of action against the Lippman parties as intended beneficiaries of the engagement of the Lippman parties by the Landrys. In so finding, I recognize that the jurisprudence has not clearly defined the limits of the beneficiary relationship or the adversarial relationship that serves as the basis for the rule set forth in **Penalber,** 550 So.2d at 581. See generally **Blanchard,** 112 So.3d at 252 (acknowledging the "somewhat murky standards stated in the jurisprudence" pertaining to the existence of a cause of action by a non-client against an attorney).

However, my research reveals that the majority of cases in which courts have considered whether an attorney can be held liable to a non-client for negligent breach of a professional obligation involve claims arising from actions taken by opposing counsel during the course of litigation, wherein the adversarial positioning of the parties is immediately apparent. See e.g., **Joyner,** 665 So.2d at 636–37. See also **Allen v. Lowe,** 15–0983 (La.App. 1 Cir. 12/23/15), 2015 WL 9466853, *1 (unpublished); **Castle v. Castle,** 13–271 (La.App. 3 Cir. 10/9/13), 123 So.3d 1267, 1272; **Morshaeuser v. Citimortgage, Inc.,** 2012 WL 5289383, *6 (E.D. La. 2012) (unpublished).

Furthermore, I am persuaded by the definitional distinction between beneficiary relationships and adversarial relationships. Black's Law Dictionary (10th ed. 2014) defines an "adversary" as "[a]n opponent; esp., opposing counsel.—Also termed *opposition.*" Black's Law Dictionary in turn defines "opposition" as, *inter alia,* "[t]he relation between two things that are different as possible from each other ... [o]ne or more people that someone is striving or competing against; ADVERSARY." Conversely, Black's Law Dictionary defines a "third-party beneficiary" as "[s]omeone who, though not a party to a contract, stands to benefit from the contract's performance."

Here, the Maughan parties do not assert a cause of action arising out of the actions of opposing counsel during the course of litigation, nor can the relation between the Maughan parties and the Landrys during the course of the contract negotiations be fairly described as being "as different as possible from each other." Rather, the Maughan parties alleged the Lippman parties negligently represented the Landrys and/or exceeded the scope of the authority granted to them by the Landrys, thereby invalidating provisions of Maughan II. The allegations further indicate that Maughan II is an onerous contract, i.e., a contract

**932**

in which each of the parties gains an advantage in exchange for an obligation. See La. C.C. art. 1909. Thus, like the legatees in **Succession of Killingsworth**, *supra*, the Maughan parties were positioned to be advantaged, at least in part, by the fulfillment of the Lippman parties' professional obligations owed to the Landrys with respect to the negotiation of a valid, enforceable contract, such that the Maughan parties were foreseeably injured by the failure of the Lippman parties to exercise reasonable care in the performance of their professional obligations.

In closing, I want to stress that while an attorney retained by a client to negotiate the terms of a contract owes a duty of loyalty to his client and naturally strives to obtain the greatest advantage for his client, it is known, or should be known, to the attorney that the other party to the contract is also negotiating to receive an advantage. Consequently, it is foreseeable that if the attorney breaches his professional duty during the course of the contract negotiations, thereby invalidating the contract, the attorney's negligence may result in damage to the client, for which the attorney will be liable in tort, and may also result in damage to the other party who stands to be benefitted by the agreement, for which the attorney should likewise be liable in tort. In the context of the instant appeal, I do not know whether the Maughan parties would prevail on their negligence claims against the Lippman parties at trial, but I do not believe that the cause of action should be dismissed at this stage.